## SUPREME COURT.

### DAVID BROWN and others agt. DAVID AUSTEN and others.

A person perfectly solvent can make by *deed,* a *settlement* of his property upon his children, without doing injustice to any creditor then existing.

As between the parties, *natural affection* is a sufficient consideration to support the deed.

The *delivery* of a deed need not be to the *grantee;* it may be to a stranger for and in behalf of the grantee, and if *unconditional* will take effect *instanter.*

The defendant David Austen, while perfectly solvent, executed deeds to his three daughters, to secure to them and their issue certain real estate, and delivered them to Mr. Nicoll, who gave the grantor receipts therefor stating that they were received by him in *escrow;* and two were to be delivered to two of the daughters at and upon the death of the grantor, or at such earlier period as he (the grantor) might designate, and the other to be delivered to the other daughter after the deaths of the grantor and his wife, or at such earlier period as might be by either of them designated.

*Held,* that the right of *revocation* on the part of the grantor was inconsistent with these agreements and trusts, on the part of Mr. Nicoll; and after accepting the receipts the grantor would not have been permitted to revoke or reclaim the deeds even as gifts.

*Held,* also, that from all the facts and circumstances disclosed in the case, it was .apparent that the grantor *intended* the deeds to take effect *presently* and *irrevocably* by the delivery to Mr. Nicoll, for the use of his three daughters.

*New York Special Term, January,* 1861.

MOTION by defendants to dismiss complaint.

HENRY NICOLL, WM. CURTIS NOYES and CHA's O'CONOR,
   *for defendants.*
WM. M. EVARTS, *for plaintiffs.*

SUTHERLAND, Justice. When the deeds to his three daughters were executed and delivered to Mr. Nicoll, Mr. Austen was perfectly solvent, and could make a settlement of the property in question on them, without doing injustice to any creditor then existing.

As between the parties, natural affection was a sufficient consideration to support the deeds.

There is nothing in the case to show that by the trans-

action Mr. Austen intended to defraud any creditor then existing or subsequent.

The question as to the operation of the deeds (independent of the question as to the delivery) whether by them the grantor did or could, without any trustee or trust, convey or secure a contingent remainder in fee to vest on the death of the daughters, to their surviving children, and the descendants of such of their children as may have died before the daughters respectively, is not, I think, in the case. The deeds could, at all events, operate to convey life estates to the daughters respectively. If the contingent remainders undertaken to be limited on the life estates by the deeds are void, they are void at law, and on the face of the deeds. The plaintiffs had no occasion, or right, to come into a court of equity for a construction of the deeds merely, nor do they ask for such construction. The equity of the plaintiffs' case must rest, I think, upon their theory, that the second delivery of the deeds by Mr. Nicoll to the daughters was and is fraudulent and void as to the plaintiffs.

The nature and effect, and perhaps *bona fides* of this second delivery to the daughters, depends upon the nature and effect of the first delivery to Mr. Nicoll.

The case turns, I think, upon the nature and effect of the first delivery. Was it an absolute, unconditional delivery to Mr. Nicoll, in trust for or for the use of the daughters, or was it a delivery in *escrow;* that is, a conditional delivery ? The delivery of a deed need not be to the grantee ; it may be to a stranger for and in behalf of the grantee, and if unconditional will take effect instanter. (1 *John. C.,* 253, *n.* ; *Sheppard T.,* 57 ; 4 *Cruise,* § 52.)

Considering not only the terms of the receipts given by Mr. Nicoll to Mr. Austen for the deeds, but also the situation of the parties, and all the other circumstances of the case, did Mr. Austen intend to deliver the writings to Mr. Nicoll as his deeds, and that they should take effect and

operate as his deeds, presently and irrevocably, on the delivery to Mr. Nicoll; or did Mr. Austen intend to deliver the writings to Mr. Nicoll, in *escrow*, to be delivered by him to the daughters of Mr. Austen as his deeds, on the happening of the event, or of either of the events, mentioned in the receipts of Mr. Nicoll for the deeds, and that they should not operate or take effect as his deeds until such second delivery ?

That this is the real question in this case, see *Wheel-wright* agt. *Wheelwright*, (2 *Mass. Rep.*, 447;) *Hatch* agt. *Hatch*, (9 *Mass.*, 307;) 1 *John. C.*, 253, *n.* [*b.*;] *id.*, 116, *n.* [*a.*;] *Stilwell and wife* agt. *Hubbard*, (20 *Wend.*, 44;) *Jackson* agt. *Leek*, (12 *Wend.*, 105;) *Jackson* agt. *Rowland*, (6 *Wend.*, 666;) *Verplank* agt. *Sterry*, (12 *John.*, 536, 546, 551, &c.;) *Church* agt. *Gilman*, (15 *Wend.*, 656.)

On this question, the fact that Mr. Nicoll, on drawing the receipts, stated that they were received by him in *escrow*, is not controlling.

In *Wheelwright* agt. *Wheelwright*, (2 *Mass.*,) above cited, the deeds were delivered to A. for the use of the grantees as *escrows*, as A. testified, to be delivered by him to the grantees after the death of the grantor. A. further testified, that it was the intent of the parties that the grantor should have the use of the premises during his life; and as some of the grantees were minors, and could not secure the use to him; that the deeds were delivered as *escrows*; that the deeds were executed to prevent the entail (by a previous devise in tail under which the respondent claimed) from depriving the grantees of the land; and yet PARSONS, Ch. J., held " that the weight of the evidence was certainly very great, if not conclusive, in favor of the deeds having been delivered by the grantor as his deeds, and deposited with A. for the grantees ;" but he held further, " that if delivered as *escrows*, then by relation they took effect from the death of the grantor."

In *Doe & Lord* agt. *Burnett*, (8th *Car. & Payne*, 124,)

there was a deed of gift to the grantor's daughter delivered to a third party, not to be delivered to the daughter until after the grantor's death, and yet it was held that the delivery was complete, and that the deed would not have operated as an *escrow*, if it had been delivered on condition that the grantee did not have it till the grantor's death.

In *Murray* agt. *Stair*, (3 *D. & R.*, 278, 2 *B. & C.*, 82,) it was held that a bond executed with the usual formalities may operate as a deed in *presenti*; although, at the time of such execution, it was expressly agreed that it should not take effect until a certain event (the death of A. named in condition, and until certain securities were returned to the obligor) had happened ; and that the intention of the parties was a question of fact for a jury on the whole evidence. (*See also Stewart* agt. *Stewart*, 5 *Conn. R.*, 317.)

The question then before stated, as to the delivery of the deeds by Mr. Austen to Mr. Nicoll, is a question of intention to be gathered from the whole evidence.

If, by the transaction, Mr. Austen intended at that time irrevocably to secure the property in question to his three daughters and their issue, there was nothing to prevent him from doing it, and there was the natural affection of a father to induce him to do it.

In the case of *Wheelwright* agt. *Wheelwright*, (2 *Mass.*,) before cited, PARSONS, Ch. J., observed, " that it was not to be presumed that it was the intention of the grantor to deliver the deeds as *escrows*, to be after-delivered as his deeds in the event of his death, when from the nature of the event, they could not be considered as his deeds from the second delivery." (*See also, Stilwell and wife* agt. *Hubbard*, 20 *Wend.*, 44, *and Jackson* agt. *Leek*, 12 *Wend.*, 105,) before cited, to the effect that a delivery after the grantor's death is nothing—that the delivery must be in his lifetime.

If deeds are delivered to a third party in *escrow*, and the grantor dies before the happening of the event upon which the second delivery is to be made, they can only take effect

by the doctrine of relation; that doctrine being a fiction of law. (*Jackson* agt. *Rowland,* 6 *Wend.,* 669; 4*th Cruise, Title Deed,* § 55.)

But this doctrine of relation, being but a fiction of law, cannot be applied to the prejudice of the intervening rights of third parties, not parties or privies. (1 *John. C.,* 90, *note; Heath* agt. *Ross,* 12 *John.,* 140.)

I think, therefore, that there is no room for the doctrine of relation in this case; for if the deeds were delivered to Mr. Nicoll in *escrow,* or conditionally, they could take effect only from the second delivery, the delivery by Mr. Nicoll to the daughters. (*Jackson* agt. *Catlin,* 2 *John.,* 259.) But when the delivery by Mr. Nicoll to the daughters was made by the direction of Mr. Austen, he was desperately insolvent, and the plaintiffs were then his creditors; and I do not see why such second delivery should prejudice the plaintiffs' rights, or protect the property in question from their judgment.

Such protection must rest, I think, on the completeness of the first delivery; on the intention that the deeds should take effect instanter, on the delivery to Mr. Nicoll. If the deeds were delivered to Mr. Nicoll in the first instance, instead of to the daughters, for the purpose of preventing them or their husbands having full control of the property, I do not think that circumstance should affect the question as to the completeness of the first delivery, or the question whether Mr. Austen by that delivery intended to pass a present estate. The present control or possession of the title deeds was a matter between Mr. Austen and his daughters. There is nothing in the case to show that the plaintiffs gave credit to Mr. Austen, or to his firm, because they supposed he was the owner of the property covered by the deeds. Two of the houses were built for his daughters, and it does not appear that he was ever in the actual possession or occupation of them.

As a general rule, the delivery of a deed is complete when

the grantor has put it beyond his power to revoke or reclaim the deed. (*Maynard* agt. *Maynard*, 10 *Mass.*, 458 ; *Doe* agt. *Knight*, 5 *Barn. & Cress.*, 671 ;· *S. C.* 8 *Dowl. & R.*, 364 ; *Frisbie* agt. *McCarty*, 1 *Stewart & Por.*, 61 ; *and several of the cases before cited.*)

Could Mr. Austen have revoked or reclaimed the deeds of his own will, and without the consent of his daughters, at any time after their delivery by him to Mr. Nicoll ?

I think he could not. The receipts given by Mr. Nicoll for the deeds neither reserved nor gave such right. By the terms of the receipt, which expressed the trust on which Mr. Nicoll received the deeds, they were to be delivered to the daughters at all events.

By the receipts for the deeds to the daughters Sarah Ann and Mary, Mr. Nicoll agreed to deliver them to the daughters at and upon the death of Mr. Austen, or at such earlier period as he might designate.

By the receipt for the deed to the daughter Hannah C., Mr. Nicoll agreed to deliver the deed to her after the deaths of Mr. Austen and his wife, or at such earlier period as might be by either of them designated.

A right of revocation on the part of Mr. Austen was inconsistent with these agreements and trusts on the part of Mr. Nicoll ; and Mr. Austen, after accepting the receipts, would not have been permitted to revoke or reclaim the deeds even as gifts. The gifts, if gifts, were executed by the delivery of the deeds to Mr. Nicoll, and the acceptance of the receipts by Mr. Austin.

It does not elucidate the question in this case much, to affirm or deny that the transaction was of the nature of a testamentary disposition of real estate. Such expression was unguardedly used in *Belden* agt. *Carter*, (4 *Day's R.*, 66,) but was afterwards explained and corrected in *Stewart* agt. *Stewart*, (5 *Conn. R.*, 317.)

In *Belden* agt. *Carter*, and in *Ruggles* agt. *Lawson*, (13 *John.*, 285 ;) *Tooley* agt. *Dibble*, (2 *Hill*, 641 ;) *Goodell* agt.

*Pierce*, (*id.*, 285,) the questions were between those claiming under the deeds and heirs-at-law of the grantor; and there was nothing in these cases to prevent the application of the doctrine of relation. But the very application of that doctrine showed that the deeds did not and could not take effect like a devise; for, by the application of that doctrine, they must have been deemed to have taken effect in the lifetime of the grantors from the time of the first delivery.

In this case the deeds could never have taken effect as a devise, for they lack the necessary statutory formalities of a will.

If Mr. Austen intended that the deeds should take effect like a devise, why did he go through the ceremony of their execution and delivery to Mr. Nicoll? Why did he not devise the houses, &c. to his daughters? Why did his wife execute the deeds? If by his will he had devised the same property to his daughters, then why make and deliver the deeds to Mr. Nicoll upon the trust he did, unless he intended by the transaction to make a present and irrevocable settlement upon his daughters?

There are other circumstances disclosed by the evidence in this case, which go to show that Mr. Austen intended the deeds to take effect presently and irrevocably by the delivery to Mr. Nicoll.

The houses on the three lots deeded to the daughters were built by Mr. Austen, about the year 1840, several years before the delivery to Mr. Nicoll—two of them for his daughters Sarah Ann and Mary, who were then married, and who were so informed.

On their completion, Sarah Ann selected No. 33, and moved into it with her husband and family, and occupied it until about the 1st of May, 1847; Mary, with her husband and family, moved into No. 35, and occupied it until 1851, several years after the delivery of deeds to Mr. Nicoll; and Mr. Austen, with his family, including his then

unmarried daughter Hannah C., moved into No. 31, and occupied it until 1851.

Isaac Townsend, the husband of Mary, paid the taxes on No. 35 from the time he moved into it.

Soon after the delivery of the deeds to Mr. Nicoll, Sarah Ann and Mary were informed of it by Mr. Austen, and Mary and her husband were both told by Mr. Austen that they could have the deed for No. 35, if they desired it.

As to the deed to Hannah C. for No. 31, that upon its execution was actually delivered to her, and kept by her for a week, and then handed back by her to her father, with a request to deliver it to Mr. Nicoll with the deeds to her sisters.

Mr. Fox, her intended husband, and to whom she was shortly after married, saw the deed in her hands; and the father of her intended husband had been previously informed by Mr. Austen, that he had given or intended to give No. 31 to Hannah C.

Considering the number of Mr. Austen's children, and the situation and amount of his whole estate as disclosed by the evidence, the present and absolute conveyance to the daughters of the three houses and lots was a just and natural provision for them out of his estate.

The circumstance that Mr. Austen paid the interest on the mortgages on the property subsequent to the delivery to Mr. Nicoll, I do not deem very material. It only shows a disposition to make further gifts to his daughters.

Upon the whole, without adverting to other circumstances in the case, I am satisfied that the delivery to Mr. Nicoll should be considered an irrevocable and complete delivery for the use of the daughters; that by it the deeds took effect, and were intended to take effect presently, passing at least life estates to the daughters; upon which, or upon whatever estate did or could pass by the deeds, the plaintiffs have no claim or lien.

As to the point taken by the plaintiffs that the deeds, if

valid, would unlawfully suspend the power of alienation, I do not think it well taken.

The power of alienation, if suspended, is suspended only by the contingency of the remainders in fee. These remainders (if in fact created, or validly limited by the deeds) must rest on the death of the daughters respectively. It is a present estate that passes to the daughters by the deeds. The contingency of the remainders can suspend the alienation of the whole fee for one life only.

Besides, if the deeds are void on this ground, they are void at law, and on their face. There was no need of the plaintiffs coming to a court of equity to have them declared void.

If the question as to the legal effect and operation of the deeds, supposing the first delivery to have been complete, can be called a cloud upon the title, it is a legal cloud, which should be cleared away by a court of law.

After a most careful consideration of the whole case, my conclusion is, that the complaint should be dismissed, with costs.