12529

DES CHAMPS v. MIMS

(145 S. E., 623)

*Messrs. Harby, Nash & Hodges,* for appellant, ▮▮▮▮

*Messrs. Epps & Levy* and *W. C. Davis,* for respondent,

November 22, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for the recovery of real estate and for damages for its use and occupation.

The plaintiff traces his title to his grandfather L. H. Des Champs, who devised certain real estate, of which that in controversy was a part, to his living children for life, remainder to their children.

The father of the plaintiff was C. D. Des Champs, a son of the testator; the plaintiff was his only child.

After the death of the testator, the children partitioned the land among themselves; the father of the plaintiff was allotted a tract of 150 acres, which included the particular tract, containing 60 acres now in controversy.

The defendant traces his title by successive conveyances, in reverse order, as follows:

T. B. Mims, the defendant, from J. J. Touchberry, December 22, 1919; he from C. R. Touchberry, January 8, 1919; he from C. H. Broadway in 1917, recorded October 24, 1917; he from A. I. Barron, Clerk of Court, March 26, 1914.

The deed from A. I. Barron, Clerk of Court, to C. H. Broadway, dated March 26, 1914, was executed in pursuance of a decree of his Honor, Judge Wilson, dated February 21, 1914, in an action instituted in 1913 by C. D. Des Champs, father of the plaintiff, against his brothers, sisters, nieces and nephews, alleging, in substance, that he was unable to make a living upon the 152-acre tract; that he had mortgaged the same and was unable to pay the mortgage; that the remainder of the tract could be made more profitable by the erection of improvements. He prayed for judgment that he be allowed to sell 60 of the 152 acres, and out of the proceeds of the sale that his mortgage indebtedness be paid, and that, after the payment of the costs of the proceeding and attorney's fees, the remainder be paid to him, to be expended in making improvements upon the remaining 92 acres of the tract.

The parties defendant were the only person *in esse* at that time having an interest in the land. C. D. Des Champs had married, as stated in the transcript, "at some time prior to February 2, 1914," and at that time there were no children born of that marriage. The case was referred to a special referee, who made a report recommending that the prayer of the complaint be granted, the defendants offering no objection. His report was confirmed by a decree of his Honor, Judge Wilson, dated February 21, 1914.

In pursuance of that decree, the Clerk of Court sold the 60 acres to C. H. Broadway for $2,500, and executed a deed to him therefor. The proceeds of sale were applied:

To two mortgages of C. D. Des Champs to
| | |
|---|---:|
| Weinbery | $ 922.10 |
| Attorney's fees | 204.00 |
| Costs | 59.70 |
| Referee | 6.00 |
| And the balance was paid directly to the life tenant, C. D. Des Champs | 1,308.20 |
| | $2,500.00 |

No part of the $1,308.20 paid to the life tenant was expended in improvements upon the remaining 92 acres of the tract.

No confirmation of the sale was made by order of Court until July 7, 1922; the cause was not on the Calendar, and no notice of any motion for an order to confirm such sale was given this infant plaintiff.

The plaintiff was not born until August 29, 1914, a little more than six months after date of the decree of his Honor, Judge Wilson, and in the course of nature was *en ventre sa mere* at that time.

C. D. Des Champs died November 25, 1921, leaving the plaintiff as his only child.

The case at bar of the infant son of C. D. Des Champs against the defendant, Mims, the present holder of a claimed title, by previous conveyances traceable back to the deed of the Clerk to Broadway under the proceedings referred to, came on for trial before his Honor, Judge Mann, and a jury at March term, 1927.

At the close of the evidence for the plaintiff, the defendant moved for a nonsuit upon the reported grounds; the motion was granted in an order also reported. The plaintiff has appealed.

The nonsuit was granted upon the ground that the plaintiff, who was not in being at the time, was concluded by the decree of his Honor, Judge Wilson, in the proceeding brought by the life tenant for the sale of the 60 acres. This presents the main point in the appeal.

It has been suggested that the interest of the unborn child of C. D. Des Champs, referred back to the death of the testator, was a contingent remainder, and comes within the rule announced in *Bofil v. Fisher,* 3 Rich, Eq., 1, 55 Am. Dec. 627, that "the Court has the power, by its decrees, to alienate the contingent titles of unborn remaindermen."

We do not so consider the interest of the unborn child. It is true that the vesting of his interest was necessarily postponed to the time of his birth; at the same time the fee had to be in some one, by way of remainder or executory devise, and those who held the fee were trustees for such child or children of the life tenant as might be in existence at the time of the death of the life tenant. Where there were children living at the time of the death of the testator, and a child was subsequently born, it has been held that the children in being took vested transmissible interests, which, however, *opened up* to let in children born after the death of the testator. In such case, the children in being at the time of the death of the testator took their vested interests subject to sharing with the after-born child, trustees for him. Such being the case, we can per-

ceive no reason why, in the event that there were no children to take vested interests at the time of the death of the testator, the tenants of the fee-simple title should not occupy the same relation to the unborn child. "In what respect does a limitation to A for life, remainder to his son B, now living, in fee, which confessedly gives B a vested remainder *eo instanti,* differ from the case where the remainder is limited to the first son of A, hereafter to be born, *except that the vesting of the interest must, of necessity, be postponed until the birth of a son?"* *Rutledge's Trustees v. Rutledge's Adm'x,* Dud. Eq., 201.

In *Gourdin v. Deas,* 27 S. C., 479, 4 S. E., 64, there was a trust deed for the benefit of D. for life, "and after her death to her issue to take *per stirpes,* their heirs and assigns forever." The Court held that D. took an estate for life, and that "the remainders vested in such of the issue as were *in esse* at the date of the deed, at that time, opening to let in other issue as they came into existence, whose interests were also vested at their birth. * * *"

Chief Justice McIver, who wrote the opinion in the *Gourdin v. Deas case,* cites, "as a case of high authority," *doe ex rem. Barnes v. Provost,* 4 Johns. (N. Y.), 61, 4 Am. Dec., 249. There the testator devised certain land to his daughter C. for life, and at her death to such children as she shall have lawfully begotten at the time of her death, to be equally divided among them. At the date of the will and at the death of the testator, C. had four children; thereafter a fifth child was born who predeceased the life tenant C. leaving children. The Court held that the four children took vested remainders, which opened to let in her children of C. subsequently born, and hence that the children of a daughter of C., who predeceased C., the life tenant, were entitled to the share which their mother would have taken if she had survived the life tenant.

But, assuming that the interest of the plaintiff, unborn at the death of the testator and when the order of sale was

made, was a contingent remainder, the facts of this case do not bring it within the rule announced in the *Bofil v. Fisher case.*

The Court there said:

"Is there no power in the state, by which the titles of estates may be unfettered from the contingent claims of unborn remaindermen, and *their rights not extinguished, but transferred from the property itself to a fund arising from the sale of the property?* I think there should be; I think there is. * * * The Court by its decree acts on the property and disposes of that; *while the fund arising from the sale is to be managed under the direction of the Court* in its administrative department. *The rights of all the parties in interest will be transferred from the property to the fund, and will be protected by the Court, so far as that is practicable."*

We have only to consider the purpose to be accomplished by the life tenant, and the decree of the Court, in the suit instituted by him against the heirs of the testator, in 1914, to be convinced that it is wide of the mark indicated in the *Bofil v. Fisher case.* His purpose is disclosed in the prayer of the complaint:

"That plaintiff be allowed to sell 60 acres; that the mortgage indebtedness be paid out of the proceeds of sale, that the remainder of proceeds of sale, after payment of costs. attorney's fees, etc., be turned over to plaintiff to be expended in making improvements upon the remaining portion of the premises."

The decree practically follows the prayer of the complaint. Not a word is said in either as to the interest of the unborn child which was then on its way, presumably to the knowledge of the father.

Under the *Bofil v. Fisher case,* such a proceeding can be justified only under the circumstances therein stated: The rights of the so-called contingent re-

mainderman *must not be extinguished;* here they are absolutely so; the rights of such person *must be transferred from the land to the fund;* here there is not a suggestion that that be done; in fact, the fund is directed to be dissipated in part by the payment of the life tenant's lien obligations, and the remainder turned over to him after the payment of costs and attorney's fees, to be expended by him in improvements upon the remaining 92 acres; no provision is made for *the supervision by the Court,* "in its administrative department," of the fund arising from the sale; the fund, on the contrary, was directed to be applied to the debts of the life tenant, with which the remainderman was not concerned, and no check placed upon the life tenant's disposition of the remainder for improvements which resulted in his failure to make *any* improvements and his wasting of the entire fund.

We think that under the following authorities the decree of his Honor, Judge Wilson, was without authority of law, absolutely void, and furnishes no shield to the purchaser against the claim of the remainderman. 33 C. J. 1076; 15 R. C. L., 853; *Anthony v. Kasey,* 83 Va., 338, 5 S. E., 176, 5 Am. St. Rep., 227; *Sache v. Wallace,* 101 Minn., 169, 112 N. W., 386, 11 L. R. A. (N. S.), 803, 118 Am. St. Rep., 612; *Mauldin v. Mauldin,* 101 S. C., 1, 85 S. E. 60; *Piegler v. Jefferies,* 128 S. C., 254, 121 S. E., 783; *Cagle v. Schaefer,* 115, S. C., 35, 104 S. E., 321; *Gaines v. Sullivan,* 117 S. C., 475, 109 S. E., 276; *Kolb v. Booth,* 80 S. C., 501, 61 S. E., 942; *Dumas v. Carroll,* 112 S. C., 284, 99 S. E., 801; *Bradley v. Calhoun,* 116 S. C., 7, 106 S. E., 843; *McIver v. Thompson,* 117 S. C., 175, 108 S. C., 411; *Fairey v. Strange,* 115 S. C., 10, 104 S. E., 325; *Rutledge's Trustees v. Rutledge's Adm'x,* Dud. Eq., 201; *Mangum v. Piester,* 16 S. C., 316; *Rutledge v. Fishburne,* 66 S. C., 155, 44 S. E., 564, 97 Am. St. Rep., 757; *Haynsworth v. Haynsworth,* 12 Rich. Eq., 114; *Cannon v. Cannon,* 135 S. C., 183, 133 S. E., 556; *Pearson v. Carlton,* 18 S. C., 47.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Mr. Chief Justice Watts, and Messrs. Justices Blease, Stabler, and Carter concur.