12957

*EX PARTE:* DARBY

BRANYON v. SMITH *ET AL.*

(154 S. E., 632)

438

*Mr. B. F. Martin,* for appellant,

*Mr. A. H. Dagnall,* for respondent,

July 30, 1930.

Opinion of the Court was delivered by MR. JUSTICE CARTER.

The facts and issues involved in this case are set forth in the decree of his Honor, Judge William H. Townsend, who heard the case. We agree with the conclusion reached by Judge Townsend. Therefore the exceptions are overruled, and the judgment of the Circuit Court affirmed.

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur in result.

MR. JUSTICE COTHRAN (concurring in result) : This is an appeal from an order or decree of his Honor, Judge Townsend, dated December 21, 1928, refusing a petition and motion of the petitioner, Talulah Darby, a daughter of John M. G. Branyon, to vacate and set aside a judgment rendered on February 3, 1905, in the Court of Common Pleas of Anderson County, in the main cause above entitled, upon the ground that the Court did not have jurisdiction of the subject-matter of the action, and upon the further ground that the petitioner, Talulah Darby, though named as a party defendant in the suit, was not made a party thereto by personal service of the summons and complaint, or otherwise.

On March 12, 1928, the petitioner filed her petition and obtained from the Court a rule to show cause why the judgment referred to should not be set aside *as to her*, upon the grounds stated above. The petition and order were served

upon a number of persons who had purchased from W. C. Branyon severally certain portions of the real estate involved, namely: J. Furman Evans, the Town of Honea Path, John Frank, J. S. Fowler, J. M. Mitchell, R. G. Gambrell, C. L. Lollis, J. A. Alewine, A. M. Graham, H. A. Wiles, L. W. Davis, H. B. Roper, E. J. Lewis, W. A. Pinson, Mrs. Blanche Tice, and W. R. Wright, and Mrs. Elizabeth (W. C.) Branyon, individually and as administratrix of the estate of W. C. Branyon, deceased, and Mrs. Alice L. Sykes.

The respondents made return to the petition and rule denying the allegation that there was no service, and pleading additional defenses, as set out in Judge Townsend's decree and order herein.

The matter was referred to a Special Referee to take the testimony and report the same, who performed that-duty on December 1, 1928.

On December 21, 1928, his Honor, Judge Townsend, filed his decree dismissing the petition and motion, and from it the petitioner has appealed.

The case is quite complicated, and a review of the antecedent facts appear essential to a proper determination of the issues involved.

Thomas M. Branyon lived in or near the Town of Honea Path. He owned at least three parcels of land probably contiguous—180 acres, a part of the home tract, 170 acres also a part of that tract, and 117 acres known as the Wesley Greer tract. He died April 15, 1882, leaving a will dated October 22, 1878, in which he failed to appoint an executor. His sole heirs at law were his widow, Lucinda, and a son, William Calhoun Branyon, hereinafter referred to as W. C. Branyon. The son was unmarried at the time of the death of the testator, Thomas M. Branyon, but later, in 1889, married. Two sons were born of the marriage—one, William, born in 1900 and died in 1906; the other born in 1908 and died in 1921. W. C. Branyon died in September, 1927, without leaving a surviving child.

The testator devised the 180-acre tract to his son, W. C. Branyon, by the first clause of his will, apparently an absolute fee-simple estate, but in a subsequent clause of the will this provision apperas: "If my said son (W.C. Branyon) should die without children," the tract was to go to the heirs of the testator's brother, John M. G. Branyon.

As stated, W. C. Branyon, although married in 1889 and having had two sons born of that marriage, both of whom predeceased him, died in 1927 "without children."

The testator's brother, John M. G. Branyon, died in 1866, sixteen years before the death of the testator in 1882. His heirs at law, as of the date of the death of the testator, were his sons and daughters, R. O. Branyon, J. L. Branyon, Emily Pruitt, and the petitioner, Talulah Darby. Later the daughter, Emily Pruitt, died, leaving as her heirs at law her husband and seven children.

The testator devised the 170-acre tract "to the children of my said son, Wm. C. Branyon (if he has any)," and coupled the devise with the same limitation as above set forth:

"If my said son should die without children," the tract was to go to the heirs of the testator's sister, Martha Shirley. She died in 1888, after the death of the testator, leaving as her heirs at law a daughter, Carrie Saul, and a number of grandchildren, children of her two daughters, Martha Gantt and Jane Donehoo, who predeceased the testator.

The testator devised the Wesley Greer tract, 117 acres, to his son, W. C. Branyon, absolutely. No question has arisen as to this devise.

The will contained also a residuary clause by which his estate not therein disposed of was devised and bequeathed to his son, W. C. Branyon.

For some reason not disclosed, the testator made no provision in his will for his widow, Lucinda. She instituted proceedings in dower, and thereupon a compromise agreement was entered into between her and W. C. Branyon, in September, 1882, whereby the said Mrs. Lucinda A. Branyon

received a certain portion of the land of said deceased, including his homestead, for and during the term of her natural life, in consideration whereof she conveyed to the said William C. Branyon all other interest that she had in the estate of Thomas M. Branyon.

The widow, Lucinda, died in 1888, leaving as her heirs at law, the son W. C. Branyon, and three children by a former marriage. They and their heirs at law were made parties to the suit hereinafter referred to, the suit in which the judgment which is attacked by the petitioner in the present proceeding was rendered. The same statement is applicable to all of the heirs at law of the brother, John M. G. Branyon, and of the sister Martha Shirley, except the petitioner, Talulah Darby, a daughter of John.

In May, 1904, the son, W. C. Branyon, instituted an action in the Court of Common Pleas of Anderson County for the declared purpose of having the will of Thomas M. Branyon construed and of having it adjudicated by the Court that he was the owner in fee-simple of the three tracts described in the complaint—the 180-acre tract, the 170-acre tract, and the 117-acre Greer tract. It appears beyond question that all of the heirs at law of the various persons who might possibly be interested in the real estate were made parties defendant except the petitioner in the present proceeding, Talulah Darby. She contends that she was never served with copies of the summons and complaint. It is conceded that in the judgment roll there is no documentary evidence of service upon her, and there is no direct parol evidence of the fact elicited in the present proceeding.

The report of the Special Referee was in favor of the plaintiff, W. C. Branyon, and was confirmed by a decree of his Honor, Special Judge (now Circuit Judge) Featherstone, dated February 3, 1905. The report of the Referee and the decree of the Circuit Judge both declare that all of the parties interested were properly before the Court. The decree of Judge Featherstone passes upon the title of W. C. Branyon

to both the 180-acre tract and the 170-acre tract. As to the 170-acre tract, his Honor held that, as W. C. Branyon had no living children at the time of the death of the testator, the devise of that tract to the children of W. C. Branyon, "if he has any," lapsed; that consequently it became intestate property and vested in the widow, Lucinda, and the son, W. C. Branyon; and that she having conveyed her entire interest to him, he became seized of the whole.

It is not necessary to discuss the correctness of this construction, as to which there may be a question, as all of the heirs who could possibly have asserted a contrary interest in the 170-acre tract were properly before the Court and are bound by the decree—in fact their interests are not at all involved in the present proceeding, only the interest of Talulah Darby, who claims as an heir of the brother John G. M. Branyon.

As to the 180-acre tract, his Honor held that the heirs of John M. G. Branyon took no interest at all in the land. He held as follows:

"We are next to inquire what interest the said W. C. Branyon took under said will in the one hundred and eighty-acre tract of land described in item one of the will. In order to do this, we must determine the extent to which this item of the will is modified by the words used in item two of the will, to wit: 'If my said son should die without children, then I desire this tract, the first being given to my son, to go to Jno. M. G. Branyon's heirs, the other tract to Martha Shirley's heirs.' Remembering that the primary and chief object of the testator's beneficence was Wm. C. Branyon, and remembering further that the law favors the early vesting of estates, and remembering also that next to the said Wm. C. Branyon, the testator desired to provide for the children of Wm. C. Branyon, I hold that the heirs of Jno. M. G. Branyon have no interest, whatever, in the said tract of land. There is nothing whatever in the will tending to show that the testator intended to cut down Wm. C. Branyon's interest

in the property to a life estate only. It is evidence to my mind that his real intention was to give all his property, except the one hundred and seventy acres embraced in item two of the will, to Wm. C. Branyon absolutely and as to that tract, that he intended to give it directly to the children of W. C. Branyon, if he should have any. I am convinced also that the testator only desired to provide for the heirs of Jno. M. G. Branyon, and of Martha Shirley, in the event that Wm. C. Branyon should die without ever having any children. It will be observed that as to the one hundred and eighty-acre tract described in item one of the will, not only were there no words to indicate the intention of limiting the life estate of Wm. C. Branyon, but also that there is no provision in any instance for the children to take an interest in it by way of remainder or otherwise. Only one of Jno. M. G. Branyon's heirs has answered in this case, and that is the minor, Moffet Pruitt, who has filed a formal answer by his guardian *ad litem.* The adult heirs of Jno. M. G. Branyon, by their failure to answer, have admitted the allegations of the complaint, and the claim of the plaintiff to the fee-simple title in said land. If any interest was intended by this will to be given to the children of W. C. Branyon in the one hundred and eighty-acre tract of land, it was no more than the interest given by a fee-conditional deed, and a child having been born to W. C. Branyon, and being now *in esse,* W. C. Branyon would have a right to convey the property."

I do not agree with this construction. The devise was ██ of a fee-simple estate to W. C. Branyon, but coupled with it was the limitation that, if he should die without children, the tract should go to the heirs of John M. G. Branyon. He being dead at that time, there was no question as to who his heirs were; a clear case of an executory devise in their favor, which upon the death of W. C. Branyon in 1927, without children, vested in said heirs, giving to Talulah Darby one-fourth undivided interest.

The following cases show that the estate in Wm. C.

Branyon was a fee-defeasible upon a specific event, to-wit, his dying without children: *Drummond v. Drummond,* 146 S. C., 194, 143 S. E., 818; *Wilson v. Poston,* 129 S. C., 345, 123 S. E., 849; *Kennedy v. Rogers,* 118 S. C., 111, 110 S. E., 107; *Hall v. Hall,* 85 S. C., 475, 67 S. E., 735; *Schnell v. Sottile,* 115 S. C., 275, 105 S. E., 415; *Davis v. Hodge,* 102 S. C., 178, 86 S. E., 478.

We come then to the vital question in the present proceeding, whether the petitioner, Talulah Darby, is concluded by the decree of his Honor, Judge Featherstone, dated February 3, 1905.

The petitioner denies that she is so concluded for two reasons:

(1) That the Court was without jurisdiction to entertain the action which resulted in said decree.

(2) That she was not properly served with process therein.

I do not think that there can be a doubt as to the correctness of the proposition that, where the sole object of the plaintiff is to procure an adjudication upon the construction of a will, dissociated from some particular equity, a Court of Equity would be without jurisdiction to entertain the action.

In *Bussy v. McKie,* 2 McCord, Eq., 23, 16 Am. Dec., 628, it was held, quoting syllabus: "Equity will not entertain jurisdiction merely to construe a will. Nor will it entertain jurisdiction of a cause involving titles to land, when no discovery or partition is sought; the defendant not being in possession of any title deeds necessary to enable the complainant to sue at law, *and no, other equity existing.* A Court of Law is as competent to construe a will as a Court of Equity."·

See, also, *Anway v. R. Co.,* 211 Mich., 592, 179 N. W., 350, 12 A. L. R., 26; 33 C. J., 1097. 40 Cyc. 1838; *Willing v. Auditorium,* 277 U. S., 274, 48 S. Ct., 507, 72 L. Ed., 880; *Drummond v. Drummond,* 146 S. C., 194, 143 S. E.,

818; 1 Pom. Eq. Jur. (4th Ed.), § 652; *Hart v. Darter*, 107 Va., 310, 58 S. E., 590, 15 L. R. A. (N. S.), 599, 13 Ann. Cas., 1; note 129 Am. St. Rep., 80.

Attention is called to the Act of 1922, 32 Stat., 967, permitting declaratory judgments in certain cases, which would affect the conclusion above announced. It is without application, manifestly, to the present case. Consult the case of *Anway v. R. Co.*, 211 Mich., 592, 179 N. W., 350, 12 A. L. R., 26, upon the question of the constitutionality of such acts.

If the plaintiff had sought in his complaint nothing more than a construction of the will of Thomas M. Branyon, I think that the Court could not have entertained jurisdiction of his action. An examination of the complaint and of the facts therein stated discloses a very embarrassing situation in which the plaintiff was placed; under the will, he held a fee-simple defeasible title to the 180-acre tract, defeasible upon his dying without children; the heirs of John M. G. Branyon held an interest contingent upon the defeasance of W. C. Branyon's fee; W. C. Branyon had a living son at that time, a boy about 5 years old; it appeared reasonable that the boy would outlive him, in which event the defeasance would disappear; the land was partly or perhaps wholly within the corporate limits of the Town of Honea Path, a thriving, bustling town; as farm land it could not possibly be as remunerative as if cut up into town lots and sold. Under these circumstances it appeared improbable that the title of W. C. Branyon would be defeated by his death without children, and this no doubt is why the adult defendants, who were unquestionably properly made parties, took absolutely no interest in the action which W. C. Branyon instituted. The action was then brought with a double purpose: Either to have the fee-simple title adjudicated in W. C. Branyon, or, if held to be a fee-defeasible in him with an executory devise over to the heirs of John M. G. Branyon, that he be permitted, instead of holding the land

as farm lands, to sell it as town lots, necessarily more re-
munerative, and to invest the proceeds for the benefit of the
executory devises in the event that they should become en-
titled to the estate upon a defeasance of W. C. Branyon's
title.

Unquestionably, if W. C. Branyon had made no claim to
the absolute, indefeasible, fee-simple title to the 180-acre
tract, and had recognized the situation to have been as I
think a construction of the will required, as above stated,
he would have had the right to institute an action in equity
to permit him to adopt the alternative course above indicated.

It has been held in *Baker v. Baker,* 1 Rich. Eq., 392, that
the Court of Equity has the power to sell the absolute fee
in lands, upon the application of the person having a defea-
sible fee, even against the will of the contingent executory
devisee, provided his interests be protected and it be shown
to be for the best interests of all concerned.

"There can be no doubt of the *power* of the Court of
Common Pleas to order a sale of specific property, held
*either* under *a trust of under a direct limitation vested or
contingent,* and a reinvestment of the proceeds of sale."
*Harris v. Haris,* 86 S. C., 309, 410 68 S. E., 628, 629.

See, also, *Bofil v. Fisher,* 3 Rich. Eq., 1, 55 Am. Rec.,
627; *Bouknight v. Brown,* 16 S. C., 155; *Pearson v. Carl-
ton,* 18 S. C., 47; *Leroy v. City Council,* 20 S. C., 71;
*Mosely v. Hankinson,* 22 S. C., 323; *De Leon v. Barrett,*
22 S. C., 412; *Covar v. Cantelou,* 25 S. C., 35; *Powers v.
Bullwinkle,* 33 S. C., 293, 11 S. E., 971; *Smith v. Winn,*
38 S. C., 188, 17 S. E., 717, 751; *Hunt v. Gower,* 80 S. C.,
80, 61 S. E., 218, 128 Am. St. Rep., 862; *Mauldin v.
Mauldin,* 101 S. C., 1, 85 S. E., 60; *Cagle v. Schaefer,* 115
S. C., 35, 104 S. E., 321; *Patton v. Church,* 129 S. C., 15,
123 S. E., 493; *Mitchell v. Mitchell,* 129 S. C., 321, 123
S. E., 854; *Cannon v. Cannon,* 135 S. C., 183, 133 S. E.,
556; *Des Champs v. Mims,* 148 S. C., 52, 145 S. E., 623;
*Kirkham v. Bank,* 149 S. C., 545, 147 S. E., 648.

W. C. Branyon was not compelled to accept the construction which I think should have been put upon the will. He had the right to insist that he had the fee-simple absolute title to the property, and it appears that, as he was able to impress that view upon a very learned Circuit Judge, he was justified at least in making the contention. He had the right, too, to insist that, if that contention should not be sustained, to rely upon the alternative indicated. The Circuit Judge having sustained his contention of title, it became unnecesary to consider the equitable right set up in the alternative, which did not at all rob the Court out of its properly assumed jurisdiction.

I do not think that the jurisdicion of the Court may be sustained upon the ground that the action was for the purpose of removing a cloud from the title of the plaintiff. Jurisdiction to remove a cloud from title does not extend to a case of mere construction of a will or other instrument, or, in other words, to a case where plaintiff looks alone to the written instrument to raise the doubt and looks alone to the written instrument to solve it; in such case the invalidity, if any, appears "on its face," and "equity will not interfere to remove a cloud from title where the invalidity of the instrument of claim complained of appears on its face." 32 Cyc., 1315, and many cases cited. In 32 Cyc., 1314, note 58, it is said: "Where both parties are claiming under the same instrument and the question is purely one of construction, no case is presented for the removal of a cloud on the title. *Ecton v. Smith,* 6 Ky. Law Rep., 224; *Brown v. Austen,* 35 Barb. (N. Y.), 341, 22 How. Prac., 394."

"A doubt as to the legal construction of a deed is not a cloud on title that a Court of Equity can be called on to clear away;" *Brown v. Austen,* 35 Barb. (N. Y.), 341, 22 How. Prac., 394; 41 Cent. Dig. Quieting Title, § 18, Col., 1257.

"A doubtful construction of a clause in a will or deed does not constitute a cloud giving a Court of Equity jurisdiction to remove cloud from title;" *Button v. Mitchell,* 1 Mich. N. P., 295 (1870); 16 First Decennial Digest, p. 1807, "Quieting Title," 7 (2).

Another reason why there is no action to remove cloud from title is that equity has no jurisdiction to consider and determine mere contingent and speculative claims, claims that may never arise. Branyon might have living children and not a single one of the parties in existence in 1904 might outlive him. If so, there would be no member of the class of executory devisees whatever before the Court. *Anway v. R. Co.,* 211 Mich., 592, 179 N. W., 350, 12 A. L. R., 52, and special note at page 73; also 5 R. C. L., 662.

Still another reason against this claim of jurisdiction is that there must be a necessity to resort to *extrinsic evidence* in order to defeat the claim that plaintiffs would say was apparently valid, but actually invalid. In Pom. Eq. Juris. (3d Ed.), 399, it is said: "If the defect appears upon the face and a resort to extrinsic evidence is unnecessary, the reason for equitable interference does not exist if it cannot be said that no cloud whatever is cast upon the title."

To the same effect, see Judge Freeman's note to *Scott v. Onderdonk,* 67 Am. Dec., 111.

Cloud on title is thus defined in 11 C. J., p. 920: "An outstanding claim or encumbrance which if valid would affect or impair the title of the owner of a particular estate, and which apparently and on its face has that effect but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question."

See, also, *Trustees v. Trustees,* 85 S. C., 546, 67 S. E., 951; *Kittles v. Williams,* 64 S. C., 229, 41 S. E., 975.

The other objection of the petitioner to the proceedings resulting in the decree of Judge Featherstone, dated February 3, 1905, upon the ground that the

Court did not acquire personal jurisdiction of the petitioner, will next be considered.

It must be kept in mind that the respondents upon this appeal were not parties to the original action of W. C. Branyon against Lucinda Smith et al., in which by decree of Judge Featherstone the title of W. C. Branyon to the land was confirmed. They purchased from W. C. Branyon after the decree of February 3, 1905, was passed and in reliance upon it. All of the land which was decreed by the Court to be owned in fee-simple by W. C. Branyon has been conveyed severally to these respondents.

The petitioner would have the Court to decide that personal jurisdiction of her was not obtained and these purchasers who relied upon a solemn adjudication of the Court should lose their property upon testimony given more than 20 years after the decree was entered. The petitioner and her husband and daughter testified that she was not served with process; she has also offered other testimony in support of that contention. The recitals in the order of reference, report of Referee, and the decree of Judge Featherstone are to the effect that all of the parties were before the Court. The judgment roll contains proof of service on all of the defendants except Mrs. Darby; there is no affidavit of service as to her therein. She was living in Newberry when the action was commenced, a fact that was known to the plantiff and his attorneys. The judgment roll is complete as to all papers, except that there is no affidavit or certificate as to service upon the petitioner. At the time of the commencement of the action, W. C. Branyon had a living son about 5 years old which apparently satisfied the condition which made his fee defeasible. This fact naturally accounts for the failure of any of the adult parties to file answers in the case, and, after the lapse of 20 years, I do not think that great reliance should be placed upon the recollection of the petitioner and her husband that she had not been served with process. She lived at Newberry, a fact, as stated, which

was known to the plaintiff and his attorneys, and it is singular that attorneys of the high repute of those bringing the action should have omitted the precaution of having her served. In addition to this, the title was frequently examined by able and careful attorneys, none of whom discovered the absence of proof of service upon her. It is known that such proof is usually supplied by a separate paper thrown into the judgment roll, and, in the great number of examinations made, it is more than probable that it escaped from the judgment roll in some unaccountable way. I do not think that the title of these respondents should be destroyed by evidence as weak as appears in this case. The ruling of his Honor, Judge Townsend, as to the presumption which exists in favor of the jurisdiction of the person of the petitioner, is entirely satisfactory, supported as it is by the very pertinent and conclusive authorities cited by him.

I think, therefore, that the decree of Judge Townsend should be affirmed for the reasons which I have stated.