## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

---

Justices of the Supreme Court during the Period comprised in
this Volume.

Hon. WILLIAM D. SIMPSON, Chief Justice.
Hon. HENRY McIVER, Associate Justice.
Hon. SAMUEL McGOWAN, "          "

---

### KETCHIN v. McCARLEY.

### McCARLEY v. KETCHIN.

1. A point raised for the first time in this court, but in support of the Circuit judgment, considered.
2. A Court of Equity has jurisdiction, at the suit of a purchaser, to enjoin the levy of an execution upon land exempt by law, as a homestead of the judgment debtor, from the lien of the judgment, which, having been obtained before the sale, stands as a cloud on the title so purchased.
3. *Cantrell* v. *Fowler*, 24 *S. C.*, 424, reconsidered and affirmed.
4. The principles stated which govern a court in reviewing its decisions, and in deciding cases submitted to it.
5. Where the head of a family, at the time of judgment obtained against him, resides on land worth less than one thousand dollars, and has no other real property, this land is his homestead, and as such is excepted from the lien that the law gives to the judgment.

6. Being free from such lien in the hands of the judgment debtor because his homestead, and he having a right to convey his homestead. the land passed to the purchaser thereof unencumbered by the lien of this judgment.

7. A judgment has no lien upon land which the debtor is entitled to claim as his homestead, even though no homestead has ever been formally set apart to him ; and this provision of law does not violate the State constitution. This case distinguished from *Duncan* v. *Barnett*, 11 *S. C.*, 333.

8. A judgment debtor cannot claim homestead against a levy upon land once owned by him, but since conveyed to another, as he has neither a fee nor any lesser estate therein.

Before WALLACE and HUDSON, JJ., Fairfield, February, 1885, and February, 1886.

The appeal in the case first above stated was from the following decree of Judge Wallace :

Under this agreed statement of facts, the question is, whether W. W. Ketchin's right of homestead exemption in this land, while he owned and occupied it, still attaches to the land after he has conveyed it by deed to another. It need not be said that the lien of a judgment upon land is not divested by its sale by the judgment debtor. Our Supreme Court have declared in several cases that the right of the head of a family to sell or mortgage his land is unaffected by the homestead laws of the State. *Homestead Association* v. *Enslow*, 7 *S. C.*, 1; *Rosenberg* v. *Levi*, *Ibid.*, 344 ; *Elliott* v. *Mackorell*, 19 *Id.*, 243.

The rule being that a sale of land does not divest the lien of a judgment upon it, a sale by the head of a family of his homestead would not divest the lien of a judgment upon it unless the law provided that it should do so. The law declares that "a homestead in lands, whether held in fee or any lesser estate, not to exceed, etc., shall be exempt, to the head of every family residing in this State, from attachment, levy, and sale on any mesne or final process," and then proceeds to provide the manner of proceeding in the assignment of the homestead exemption. This language does not affect the legal properties of a judgment as settled by law, but only declares that property to a certain amount shall be exempt from their operation. *Gen. Stat.*, § 1994.

The following section (1995), however, declares that "when thirty days shall have elapsed after the filing of the return of said appraisers, setting off a homestead to any debtor, according to the provisions of the preceding section, etc., such debtor may have such return recorded in the office of the register of mesne conveyance of the county in which the same is located; and upon such return being so recorded in forty days after the proceedings have become final, the title to the homestead so set off and assigned shall be forever discharged from all debts of said debtor, then existing or thereafter contracted." This section provides that the lien of a judgment shall be discharged after all the formalities provided for the assignment of homestead have been complied with. If the legislature supposed or intended that the lien of a judgment should be discharged by the creation of the right of homestead, why make, subsequently, the discharge contingent upon the compliance with a certain mode of assignment and the performance of a voluntary act upon the part of the debtor? "Such debtor may have such return filed in the office of the register of mesne conveyance, etc.; and upon such return being recorded, etc., the title to the homestead so set off and assigned shall be forever discharged," etc. Section 1995, *supra*.

The homestead in Ketchin's land has not been assigned. He cannot have it assigned now, for he has neither a fee nor any lesser estate in it. As we have seen, the mere right of homestead does not destroy the lien of a judgment. That can only be done by certain proceedings that have not been had in this case, and cannot now be taken.

It would seem, therefore, that the levy sought to be restrained here may be made and the land sold under it. It is ordered and adjudged, that the complaint be dismissed.

Plaintiff appealed upon the following exceptions:

I. For that his honor held that the judgment of the defendant, John D. McCarley, against W. W. Ketchin, the husband of the plaintiff above named, was a lien upon the tract of land mentioned in the complaint, when it appeared from the agreed statement of facts that at the time said judgment was rendered, the value of said land was, and still is, seven hundred dollars; and that the said W. W. Ketchin, at that time, owned no other land, nor has

he since acquired any other land, out of which a homestead might be claimed.

II. For that his honor held that the lien of said judgment remained upon and attached to said land, after the conveyance thereof by the said W. W. Ketchin to his wife, the plaintiff herein, and that said land is now subject to levy and sale under said judgment.

III. For that his honor held that the said W. W. Ketchin could not make a transfer of said land, as his homestead, unaffected by said judgment, before said land had been assigned and set apart to him as and for his homestead.

IV. For that his honor held that the lien of said judgment upon said land could not be divested and discharged from W. W. Ketchin's homestead therein until all the formalities provided by law for the assignment of homesteads had been complied with.

V. For that his honor held that W. W. Ketchin could not now have a homestead in said land assigned to him, as against said judgment, because he had neither a fee nor a lesser estate therein; when he should have held that the defendant was estopped from denying that fact, he having levied upon said land as the property of said W. W. Ketchin.

VI. For that his honor should have held that said judgment never was a lien upon said land, it appearing from the agreed statement of facts that the value thereof was less than the amount exempted by law as a homestead, and that at the date of said judgment, and at the time of the conveyance to the plaintiff, the said W. W. Ketchin was entitled to and might have claimed it, as against the judgment of the defendant.

VII. For that his honor should have held that the transfer of said land to H. M. Ketchin by W. W. Ketchin, her husband, in no way affected or enlarged the rights of the defendant under said judgment; that he was in no way prejudiced by said transfer, and that he acquired no new rights thereby under his judgment.

VIII. For that his honor dismissed the complaint of the plaintiff.

In the second case, involving the right of W. W. Ketchin to claim homestead in land which he had conveyed to his wife, the decree of Judge Hudson was as follows:

Upon the foregoing agreed statement of facts, the issue as to the right of W. W. Ketchin to homestead in the tract of land levied upon is submitted to me. My judgment, after argument heard, is that the right of homestead does not exist, that the exceptions must be sustained, and the assignment be set aside and declared void: 1. Because W. W. Ketchin has in this land no fee or lesser estate, having, for a valuable consideration, conveyed the fee to another. 2. That conveyance is not alleged to be void, nor has any suit been instituted to have it so adjudged. 3. Whether the grantee received the land exempted from levy and sale by the creditors of the grantor is not involved in the present issue; but in fact has been made the subject matter of a suit between her and this creditor, which is still pending and about to be submitted to the Supreme Court. The proper parties are before the court in that suit, and all available and subsisting rights will be therein adjudged. Ketchin, having conveyed the land in fee, no longer has an interest, and cannot claim homestead.

It is therefore ordered, adjudged, and decreed, that the exceptions to the assignment be sustained, and that said assignment be set aside and annulled.

The defendant appealed upon the following exceptions:

1. For that his honor erred in holding that W. W. Ketchin "has in this land no fee or lesser estate," when he should have held that the plaintiff was estopped from denying that fact, he having levied upon the land as the property of W. W. Ketchin.

2. For that his honor erred in holding that "Ketchin, having conveyed the land in fee, no longer has an interest, and cannot claim a homestead."

*Mr. J. E. McDonald*, for appellants.

*Mr. H. N. Obear*, contra, cited 20 *S. C.*, 374; 19 *Id.*, 465; 18 *Id.*, 242; 14 *Id.*, 27; 7 *Id.*, 19; 15 *Stat.*, 370; *Gen. Stat.*, 2004, 1995; 19 *S. C.*, 239; 21 *Id.*, 127; 3 *Wisc.*, 753; 26 *Barb.*, 374; 36 *Id.*, 571; 28 *Ark.*, 492; 5 *Minn.*, 333; 11 *Id.*, 475; 6 *Mich.*, 456; 39 *Me.*, 488; 39 *Miss.*, 467; *Smythe Homest.*, § 112; 13 *S. C.*, 370, 375; 11 *Id.*, 333; 21 *Id.*, 375; 7 *Id.*, 146; *High Inj.*, §§ 144, 266; 10 *Rich. Eq.*, 27; 4 *S. C.*, 369.

November 27, 1886.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   These two cases, though heard together here, are of such a different character as to require that they shall be considered separately.

The facts out of which the controversy in the first named case arises, are, substantially, as follows:   On June 29, 1882, the defendant, John D. McCarley, caused to be filed in the office of the clerk of the Court of Common Pleas for Fairfield County a transcript of a judgment previously obtained by him in a trial justice's court against William W. Ketchin, on a cause of action arising since the adoption of the constitutional amendment of 1880 relating to homesteads, and the act of the general assembly passed in pursuance thereof.   At that time William W. Ketchin was the head of a family residing on the land which is the subject matter of this suit, the value whereof was, and still is, seven hundred dollars; and at the time of the recovery of said judgment he had no other lands, nor has he at any time subsequently owned any other land.

On May 18, 1883, while still occupying the said land as a family residence, the said William W. Ketchin conveyed the same to Harriet M. Ketchin, the plaintiff.   About January 1, 1884, the said William W. Ketchin and his family moved off said land to a house and lot in the town of Winnsboro, which had been bought by his wife, the plaintiff herein, where he and his family now reside, only three hundred dollars of the purchase money of the Winnsboro house and lot having been paid.   On December 9, 1884, the defendant levied on the tract of land first above mentioned under the execution issued to enforce his judgment above referred to, and proposes to sell the same in satisfaction of said judgment.   Neither at the date of the conveyance by the said William W. Ketchin to the plaintiff, nor at any time previous, had he claimed or had assigned or set apart to him any homestead in or out of said tract of land, or any part thereof.   The plaintiff brought this action to enjoin the proposed sale of the said tract of land upon the ground that the land in question is not subject to levy and sale under said judgment.   The Circuit Judge held otherwise, and rendered judgment dismissing the complaint.   From

this judgment plaintiff appeals upon the several grounds set out in the record, which need not be repeated here.

Before proceeding to a consideration of the case upon its merits, it will be necessary first to dispose of a preliminary objection as to the form of proceeding. Respondent contends that in a case like this there is no ground for an injunction, because, if the appellant's theory be correct—that the judgment has no lien on the land—then the attempted levy and sale will amount to nothing, and the plaintiff's title cannot be affected thereby. In the first place, it will be observed that it does not appear that this point was ever presented to or considered by the court whose judgment we are called upon to review. It is not even presented in any of the exceptions or grounds of appeal, but was for the first time raised in the argument here. But, as counsel has contended, that while, under the rule, a judgment may not be reversed upon a point not raised below (except in cases involving questions of jurisdiction), yet it may be affirmed upon a ground not taken in the Circuit Court, we, perhaps, are at liberty to consider the question.

The jurisdiction of a Court of Equity to prevent as well as to remove a cloud upon the title to real property seems to be well settled. *High on Injunctions*, section 269. In the next section this writer proceeds to say: "It is difficult to establish any exact test, which will be applicable in all cases, to determine what constitutes such a cloud upon title as to authorize a Court of Equity to interfere for its prevention. It has been held, however, that if the sale, which it is sought to restrain, is such, that in an action of ejectment brought by the purchaser under the sale the real owner of the property would be obliged to offer evidence to defeat a recovery, then such a cloud would be raised as to warrant the interference of equity to prevent the sale." Now, if this case be subjected to the test just mentioned, it would seem to be one in which the interposition of a Court of Equity by injunction would be warranted; for if the sale is allowed to proceed, then the plaintiff herein could only protect herself in an action of ejectment brought by the purchaser at such sale, by offering evidence showing that though the title to the land was in the judgment debtor at the time the judgment was entered, and thus it was apparently

liable to the lien of the judgment, yet in fact it was not so by reason of its exemption under the homestead law. .

But, in addition to this, until this question of homestead is adjudicated, the records would show that the plaintiff held her land subject to the lien of the defendant's judgment, inasmuch as her conveyance was subsequent in date to the entry of the judgment; and hence, if she undertook to put her land on the market for sale, she would have to do so with this cloud upon her title in the shape of this apparent encumbrance. The question, however, seems to have been distinctly decided elsewhere in accordance with this view, though we are not aware of any case in this State where it has been considered. In *High on Injunctions*, section 275, it is said: "A *bona fide* purchaser of real estate for a valuable consideration may restrain a sale of the property under execution when he has purchased after the rendition of the judgment, but before the execution was delivered to the sheriff, the judgment not being a lien upon the property, since such sale would operate as a cloud upon his title. And where an execution creditor is proceeding unlawfully to sell the homestead interest of his debtor, he may be enjoined upon the same ground." The cases of *Green* v. *Bank*, 10 *Rich. Eq.*, 27, and *Wilson* v. *Hyatt*, 4 *S. C.*, 369, relied on by respondent, do not appear to us to be applicable. In the former, the question here presented does not seem to have been considered, and in the latter the parties asking for the injunction claimed a naked legal title, in which there was no *apparent* defect and upon which there was no *apparent* encumbrance, for their title was prior in date to the judgment under which it was proposed to sell the land.

We proceed, then, to consider the main question in the case, which, accepting the statement of it as made by the counsel for respondent in his argument, is, whether the tract of land described in the complaint is now subject to the lien of McCarley's judgment, and the subject of levy and sale thereunder. This question has been determined by our recent decision in the case of *Cantrell* v. *Fowler*, 24 *S. C.*, 424, but as counsel has asked and obtained leave to be heard in opposition to the principles decided by that case, we are quite willing to consider the question again, bearing in mind, however, the importance of stability in the decisions of

a court of last resort, and remembering that vacillation is some-times worse in its effects than abstract error. If, however, it clearly appears that we have fallen into an error, we will gladly seize the opportunity of correcting it. We have, therefore, given careful consideration to the able and ingenious argument of the counsel for respondent, but we must say that it has failed to con-vince us of any error in our former decision.

Several supposed cases have been presented, in which it is argued that the doctrine laid down in *Cantrell* v. *Fowler* will be difficult of application or will work hardship; but without under-taking now to consider such cases, as it will be time enough to do so when they practically arise, it is sufficient to say that there is scarcely any rule or law of mere human invention that could be readily and justly applied to every possible imaginable case. A court of justice can only deal with cases as they practically arise, and the case as now presented by the evidence for our decision is that of a judgment debtor who is now, and was at the time of the entry of the judgment, the head of a family, owning no land out of which a homestead could be claimed except the land in ques-tion, which is conceded to be worth less than one thousand dol-lars, upon which he then resided and which he subsequently con-veyed to another; and the question is whether such land is now, or ever was, subject to the lien of such judgment or liable to levy and sale thereunder. Now, if the land in question was the judg-ment debtor's homestead, it would seem to be clear that, under the express terms of the constitution and acts passed in pursuance thereof, it was exempt from attachment, levy, or sale under exe-cution, and that under section 310 of the Code of Procedure it was not subject to the lien of the judgment.

Was this land the homestead of the judgment debtor? It is conceded that it was the land upon which he, as the head of a family, resided at the time the judgment was rendered, that he had no other land, and that it was of a less value than one thou-sand dollars. It must necessarily, therefore, have been his home-stead, for otherwise he would have had none, though he was the owner of land. The language of the act of the general assembly (*Gen. Stat.*, § 1994), passed in pursuance of the mandate of the constitution, as amended in 1880, is this: "A homestead in lands,

whether held in fee or any lesser estate, not to exceed in value one thousand (1,000) dollars, with the yearly products thereof, shall be exempt to the head of every family residing in this State, from attachment, levy, or sale, on any mesne or final process issued from any court upon any judgment obtained upon any right of action arising subsequent to the ratification of the constitution of the State of South Carolina," &c. It having thus been declared in imperative terms, that a homestead in lands, not to exceed in value the sum of one thousand dollars, *shall* be exempt to the head of every family residing in this State, and it being conceded that William W. Ketchin was the head of a family residing in this State, owning no other land except the tract in question, which it is admitted does not exceed in value the sum of one thousand dollars, how can there be a shadow of doubt that the said tract of land is the thing which the law declares "*shall* be exempt" from attachment, levy, or sale under the constitution? If this be so, then section 310 of the Code of Procedure, in equally imperative terms, declares that final judgments shall not, in any case, be a lien upon the real property of the judgment debtor exempt from attachment, levy, or sale under the constitution.

It is clear, therefore, that the land in controversy in this case was not only exempt from levy or sale under the execution issued to enforce McCarley's judgment, but was not subject to the lien of such judgment. If, then, the land was not subject to the lien of the judgment when it was conveyed to the plaintiff, it must necessarily have passed to her free from any such lien or encumbrance, and cannot now be subjected to the satisfaction of a judgment against her grantor. There is nothing in the inherent nature of a judgment which gives it a lien upon real property, but it acquires that quality solely from the statute; and as we have seen, the statute in this State not only does not make a judgment a lien upon *all* the real property of the judgment debtor, but expressly excepts so much thereof as is exempt from levy and sale under the constitution. So that whenever it is ascertained, either by admission or otherwise, that a certain piece of real estate is exempt from levy and sale under the constitution, it is at the same time ascertained that such real estate is not subject to the

lien of any judgment against the owner thereof, and, if sold by him, is sold free from any encumbrance.

Indeed, the rule seems to be that the lien of a judgment is derived from, and is dependent upon, the right to sell property under it; and hence, even where there is no statute excepting property exempt from levy and sale from the lien of a judgment, there is no lien upon such property. In *Freeman on Executions,* section 249, it is said: "The lien of a judgment and of an execution is almost universally regarded as arising from the right to sell property thereunder. And hence, where the right of sale cannot be asserted, the existence of the lien must be denied. It would follow, as a logical result, from the application of this general principle, that a judgment rendered after the creation and before the abandonment of a homestead cannot be a lien thereon, and, as a result of this last proposition, it must follow that a homestead may be sold or mortgaged, and that the title of the vendee or mortgagee will be paramount to that of a prior judgment creditor." This writer goes on to say that in some of the States a different view as to the lien of a judgment upon exempt property is entertained, whereby it is held that a judgment is a lien upon exempt property, but such lien remains in abeyance only so long as the right of exemption is capable of assertion by the defendant, and, therefore, when he sells the property, and can no longer insist upon the exemption, the lien follows the property into the hands of the vendee, and the property may be sold in discharge of such lien. But he adds: "In two of the States (Wisconsin and Minnesota) where this view was sustained by the courts, the legislature, aware of the inconveniences likely to result from its maintenance, enacted statutes under which homesteads are not liable to judgment liens, and may, therefore, as in other States, be sold or encumbered by the owner, irrespective of liens existing against him arising from judgments rendered after the premises became his homestead."

Inasmuch, however, as our statute (section 310 of the Code), making final judgments a lien upon real estate, expressly excepts from its operation all property exempt from levy and sale under execution, just like the statutes which the States of Wisconsin and Minnesota found it necessary to pass in order to enable a

judgment debtor to sell his homestead free from the lien of any judgment previously recovered against him, it is not necessary for us to rest our conclusion in this case upon the rule, which, according to Mr. Freeman, seems to prevail in most of the States, that the mere fact that property is exempt from levy and sale relieves it from the lien of a judgment. For if, as is said in *Freeman on Judgments*, section 355, "homesteads exempted from execution by statute are thereafter, as long as they retain their homestead character, clear from all judgment liens, and may, notwithstanding judgments docketed against their owners, be by them conveyed or encumbered without furnishing any opportunity for such liens to attach," simply because they are exempt from levy and sale under execution, much more would this be so where, as in this State, homesteads, in addition to being exempt from levy and sale under execution, are by statute expressly excepted from the lien of a judgment. In this case the undisputed facts are that the land in question had, at the time McCarley's judgment against William W. Ketchin was entered, all the qualities necessary to invest it with the character of his homestead, and that it still retained that character when it was conveyed to the plaintiff. It was, therefore, never subject to the lien of McCarley's judgment, and cannot now be legally sold under it.

The respondent contends that no property is exempt from the lien of a judgment until it has been laid off in the manner provided for by the homestead acts, and that as the property here in question never was so laid off, it never became exempt from the lien of McCarley's judgment. We cannot concur in this view. The right of exemption must necessarily precede the calling into play the machinery provided by law for the purpose of defining the extent and limits of the property which the law had previously declared to be exempt. It is not derived from or dependent upon the mechanical act, as it were, by which the property to which it attaches is separated and distinguished from that to which such right does not attach, but rests solely upon the express mandate found in the supreme law of the land, that *certain property* shall be exempt. The only object and effect of the machinery provided by the act for laying off the homestead is to designate with precision what particular property of the debtor *has been* invested

with this right of exemption by the constitution and laws, and not *to confer* such right upon the property so designated. When, therefore, as in this case, as well as in the case of *Cantrell* v. *Fowler*, the property in question must necessarily be the property to which the right of exemption attaches, as there is no other to which it can attach, where is the necessity or propriety in requiring parties to incur the needless trouble and expense of having a homestead regularly laid off? *Lex neminem cogit ad vana seu inutilia.* As in the case of an ordinary conveyance of a tract of land, while a survey and plat is oftentimes desirable, and sometimes necessary for the purpose of designating with precision the thing conveyed, yet the survey and plat add nothing to the title which the deed confers upon the grantee, and impart no new quality to it; so here, while it may be desirable and sometimes necessary to have the homestead laid off for the purpose of designating precisely and conclusively the limits to which such exemption extends, yet such admeasurement adds no new quality to the exemption itself, which is conferred by the constitution and laws.

In some of the States their homestead laws require something to be done by the debtor in order to give rise to the exemption, as, for instance, by making and filing a declaration that the debtor intends to claim the exemption in a particular portion of land. Here, however, our homestead law requires nothing of the kind. The debtor may remain perfectly passive, and yet the exemption exists and must be respected. It cannot even be waived by the debtor by any act however solemn, and, as was held in *Myers* v. *Ham*, 20 *S. C.*, 522, even the fact that the debtor stood by and allowed his land sold without objection, would not estop him from afterwards claiming a homestead in the said land. As is said in *Freeman on Executions*, section 241: "In a majority of the States [amongst which the author classes South Carolina], the fact that the premises are occupied as a homestead is all that is necessary to render them exempt from execution. But in the other States, a declaration of homestead must be made and filed for record, or some other kind of record notice must be made, showing the world that the occupants intend to insist upon their exemption right." We think it clear, therefore, that in this State it is not necessary that anything should be done in order to give

efficacy to the exemption secured by the constitution and laws, and that whenever it satisfactorily appears that the property in question is the homestead of a judgment debtor, it is not only exempt from levy and sale under execution, but is not subject to the lien of a judgment, and may, therefore, be mortgaged or sold, either before it is formally laid off to the judgment debtor (*Homestead Association* v. *Enslow*, 7 *S. C.*, 1), or afterwards (*Elliott* v. *Mackorell*, 19 *S. C.*, 238), free from the lien of such judgment.

Any other view would, it seems to us, very materially impair the value of this beneficent provision of the law for the protection of unfortunate debtors, and sometimes render it a mere mockery of benevolence. For if the exemption does not attach until the homestead is formally assigned and laid off to the debtor, it puts it in the power of the creditor to chain his debtor down for the whole period of his life to the particular spot which he may happen to occupy at the time judgment is recovered, as the homestead could not be assigned or laid off until the creditor saw fit to direct a levy of his execution, and this, of course, he would never do, where, in a case like the one now under consideration, the whole property was confessedly worth less than the one thousand dollars. The result of this would be that, no matter how great or pressing the exigency, the unfortunate debtor could not raise a dollar by way of mortgage on the premises, and, however desirable or even necessary it might be for the debtor to exchange his homestead, either by sale or otherwise, for another, he would be effectually prevented from doing so, if, as under the view contended for, the property was still subject to the lien of his creditor's antecedent judgment. We cannot think that such is a proper construction of the law, as it would, to a very great extent, emasculate the express provision contained in section 310 of the Code, which declares that final judgments shall not be, "in any case, a lien on the real property of the judgment debtor exempt from attachment, levy, and sale under the constitution."

It is contended, however, that this provision of the code is unconstitutional, under the authority of *Duncan* v. *Barnett* (11 *S. C.*, 333), as being an attempt on the part of the legislature to extend the provisions of the homestead law beyond the limits fixed by the constitution, inasmuch as that instrument said nothing

about the lien of a judgment. We cannot so regard it. In the first place, it must be remembered that this case has arisen since the amendment to the constitution in 1880, where much more general powers have been given to the legislature than in the constitution of 1868, under which the case of *Duncan* v. *Barnett* arose. But, in the second place, it will be observed that the legislature, in passing section 310 of the Code of Procedure, was not dealing with the homestead law at all. That section does not even purport to be an amendment or extension of the homestead laws. The legislature was there dealing with a totally difent subject, to wit, the lien of judgments. It must be remembered that when the code was first adopted, final judgments, of themselves, were declared not to be liens upon any real estate of the judgment debtor, and could only be made so by certain proceedings provided for that purpose; and when the general assembly, by the act of November 25, 1873 (15 *Stat.*, 498), of which section 310 of the Code is but a repetition, saw fit to change this feature of the code, we are unable to find anything in the constitution which prohibited them from so changing the law as to make judgments a lien upon all or any portion of the judgment debtor's real property as they might see fit. They might have excepted from such lien any portion of the judgment debtor's real property that they saw fit to designate for that purpose; and the fact that they designated the property exempt from attachment, levy, and sale under the constitution as the part excepted, cannot be regarded as any attempt to interfere with or extend the provisions of the constitution in reference to homestead, but must be regarded simply as a regulation of the lien of judgments; a subject which was undoubtedly under their control.

Again, it is urged that the language used in section 1995 of the General Statutes shows that the exemption does not arise until after the homestead has been laid off in the manner prescribed. The language relied on for this purpose occurs in the latter part of the section, after provision had been previously made for the appointment of appraisers, who were required to make a return of their proceedings, and is as follows: "Such debtor may have such return recorded in the office of the register of mesne conveyances of the county in which the same is located;

and upon such return being so recorded in forty days after the proceedings have become final, the title to the homestead so set off and assigned shall be forever discharged from all debts of said debtor then existing or thereafter contracted." Now, when this language is read, as it must be, in connection with what precedes it, we think it manifest that its purpose was, not to *create* or even declare an exemption, but simply to fix a period within which the proceedings of those who should be appointed to appraise and mark out the limits of the homestead might be contested.

The object of the words quoted and relied on certainly could not have been either to create or declare the exemption, for that had already been done in the first part of the preceding section in the identical words of the constitution, and the section (1994) then very properly proceeded to provide a mode by which the property thus previously declared to be exempt could be clearly ascertained and distinguished from that which was not exempt. It then declares: "If no complaint shall be made by either creditor or debtor within thirty days after the return of the appraisers has been filed, the proceedings in the case shall be final." What proceedings? Clearly those which had just been provided for, to wit, the appraisement and setting off of that which had previously been declared exempt—the homestead. Hence, if no complaint is made within the thirty days, the proceedings being final, neither the correctness of the appraisement nor the limits of the homestead are any longer open to question. Having thus provided for a case in which no complaint has been made, the section then proceeds to provide for a case in which complaint is made in the following language: "Provided, that if exceptions thereto be filed by either creditor or debtor within thirty days after filing the return of said appraisers, the court, out of which the process issued, may, upon good cause being shown, order *a reappraisement and reassignment of the homestead* by other appraisers appointed by the court"; the words italicized by us in this quotation showing very plainly that the object of these "proceedings" was not to create or establish the right of exemption, but simply to ascertain whether the property designated by the appraisers as exempt exceeded in value the exemption previously allowed.

Then, after another proviso, which it is not important to notice

in this connection, follows section 1995, in these words: "When thirty days shall have elapsed after the filing of the return of said appraisers, setting off a homestead to any debtor, according to the provisions of the preceding section, and no exceptions have been filed against said return, or if such return be finally heard and approved, such debtor may have such return recorded in the office of the register of mesne conveyances of the county in which the same is located; and upon such return being so recorded in forty days after the proceedings have become final, the title to the homestead *so set off and assigned* shall be forever discharged from all debts of said debtor then existing or thereafter contracted." It seems to us that the words italicized by us in the quotation just made, together with the foregoing analysis of sections 1994 and 1995 of the General Statutes, show plainly that the object and effect of the language used in the latter part of section 1995, relied upon as showing that the exemption does not arise until after the homestead has been laid off in the manner prescribed, was not to create or establish the exemption, but simply to designate *finally* the specific property to which such exemption had previously attached, and to preclude any further inquiry as to the correctness of the appraisement and assignment made by the appraisers.

It would protract this opinion to too great a length to undertake a review of the numerous cases in our State upon the subject of the homestead exemption. We have, however, examined them all carefully, and while there may be some expressions in a few of them which, isolated from the context, may seem to afford support to the proposition contended for by the respondent, that the exemption does not attach until the homestead has been set off in the manner provided for by law, we are quite satisfied that such a proposition has not been authoritatively adjudged in any case in this State. On the other hand, many of the cases manifestly assume the view herein taken, though we are not aware of any case in which the point has been distinctly decided, except the case of *Cantrell* v. *Fowler*, mentioned above.

As to the authorities from other States, not much light is to be derived from them, on account of the different provisions of their statutes in reference to the homestead. Take, for instance,

2

the case of *Hoyt* v. *Howe*, 3 *Wisc.*, 752, cited by respondent, where it was held that if the judgment debtor alienates his homestead, the vendee takes it subject to the lien of the judgment. But it would seem from what is said in *Freeman on Judgments*, section 355, and in *Freeman on Executions*, section 249, that that case and others of a similar character, in Minnesota as well as in Wisconsin, were decided when the statutes of those States provided in general terms that judgments should be liens upon *all* of the judgment debtor's real estate, which were construed as extending such liens over the homestead, although it was exempt from sale. Subsequently, however, these States passed statutes similar to section 310 of our Code, relieving homesteads from the lien of judgments, thereby enabling a judgment debtor to sell his homestead free from the lien of the judgment.

Our conclusion, therefore, is that the land in question is not now, and never has been, subject to the lien of McCarley's judgment, and cannot be sold thereunder.

The second case mentioned in the title arises upon the application of the judgment debtor, William W. Ketchin, to have the same land hereinbefore spoken of set apart to him as his homestead. The facts upon which the question raised by this appeal are to be determined are the same as those hereinbefore stated in the first case, and need not be repeated here. From these facts, it appears that the appellant has long since conveyed his whole interest in the land out of which he now claims a homestead to another, and, as the case is now presented to us, he no longer has any interest of any kind in it. Under the constitution and laws passed in pursuance thereof, a homestead is only secured to one who has a fee or some lesser estate in the lands out of which it is claimed. Here the appellant has no estate of any kind in the land which he claims as a homestead, and, therefore, we agree with the Circuit Judge who heard this case, that there is no foundation for his claim. The fact that the judgment creditor has levied upon the land as his cannot affect the question either by estoppel or otherwise. The appellant is met at the threshold with an insuperable obstacle raised by his own admission, that he does not fulfil one of the conditions necessary to enable him to assert his claim, to wit, that he has no estate in fee or any lesser estate

in the land out of which he claims a homestead.   This is just as fatal as an admission that he was not the head of a family.

We take occasion, however, to add, with a view to avoid prejudice, that our decision is based upon the case as *now* presented, and upon the assumption (in the absence of any allegation to the contrary) that the conveyance to Harriet M. Ketchin is a valid conveyance.   Should that conveyance be impeached for fraud or other good ground, a different question, as to the right of appellant to the homestead, would arise, as to which we do not now propose to indicate any opinion.

The judgment of this court is, that the judgment of the Circuit Court, in the case first above mentioned, be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced. And the judgment of this court is, that the judgment of the Circuit Court in the second case above stated be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McGOWAN.   I concur, although I still adhere to the views expressed in my dissenting opinion in *Cantrell* v. *Fowler*.   But I admit that the doctrines in that case are conclusive of this.