HON. HENRY McIVER, CHIEF JUSTICE.
HON. YOUNG J. POPE, ASSOCIATE JUSTICE.
HON. EUGENE B. GARY, ASSOCIATE JUSTICE.
HON. IRA B. JONES, ASSOCIATE JUSTICE.

## VESTA MILLS v. CITY COUNCIL OF CHARLESTON.

1. STATUTE—CONSTRUCTION OF.—AN ORDINANCE will not be construed to have a retrospective effect unless plainly so stated therein.
2. JURISDICTION—COURT OF COMMON PLEAS—MUNICIPALITY.—LEGISLATURE has no power to confer on municipality authority to legislate in reference to the jurisdiction of the Courts of Common Pleas.
3. TAXES—ORDINANCE—CHARLESTON.—NEW CORPORATION purchasing plant of an old one and establishing therein same class of manufacturing, is a new corporation, under ordinance of city of Charleston of 1896, and is thereunder exempt from municipal taxation.
4. INJUNCTION—TAXES—MUNICIPALITY.—LIEN for municipal taxes is a cloud on title to real property, and enables owner to seek perpetual injunction against its enforcement.
5. INJUNCTION herein made perpetual only as to taxes of 1899.

1—60

Before GARY, J., Charleston, May, 1900. Affirmed.

Action by Vesta Mills against City Council of Charleston for perpetual injunction against collection of city taxes. From Circuit decree granting injunction, defendant appeals.

*Messrs. Geo. S. Legare* and *W. A. Holman,* for appellant, cite: *Court had no jurisdiction to grant the injunction, after city ordinance forbidding injunctions of this class:* Acts 1894, 1104; Rev. Stat., 339; 23 S. C., 70; 11 S. C., 291; 53 S. C., 201; 12 S. C., 29. *Can plaintiff maintain an action to enjoin the collection of a tax imposed against a separate and distinct corporation, to wit, the Charleston Mills?* 24 S. C., 369; 49 S. C., 188. *Is this property purchased at judicial sale exempt from taxes assessed against former corporate owner?* Con. 1895, art. VIII., sec. 8; 11 Ency., 2d ed., 353, 357; 27 Barb., 264; 92 U. S., 752; 55 S. C., 554; 22 Wall, 215; 12 Ency., 2d ed., 361.

*Messrs. Smythe, Lee & Frost,* contra, cite: *As to tax exemption:* 145 Pa. St., 105; 65 N. H., 177; 36 La. Ann., 98. *Does city ordinance forbidding injunction against taxes deprive the Court of jurisdiction?* 18 S. C., 481; 22 S. C., 504; 30 S. C., 387; 31 S. C., 6; 34 S. C., 493; 40 S. C., 62; 23 Ency., 448, 452; 40 Ala., 32; 18 Abb. Pr., 143; 11 Paige Ch., 400; 7 Johns, 493; 15 S. E. R., 374; 48 E. C. L., 5 Q. B., 771; 8 Gray, 457; 10 Mass., 439. *Said ordinance, in so far as it undertakes to regulate the Courts of the State, is invalid:* 21 Stat., 1103; Con., art. VIII., sec. 6; 30 S. C., 524; 1 Ohio St., 82; Rev. Stat., 339, *et seq. Is plaintiff entitled to the exemption?* 12 Ency., 2d ed., 318; 145 Pa. St., 105; 36 La. Ann., 98; 42 *Id.,* 733; 105 U. S., 369. *Can plaintiff maintain this action?* 49 S. C., 188; Rev. Stat., 340.

March 27, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of the case are thus stated by his Honor, the Circuit Judge: "This is a suit for an in-

junction to restrain the city council of Charleston from col-
lecting a tax claimed by the city authorities of Charleston to
be due the city by the plaintiff, Vesta Mills. The facts are
agreed and submitted in the form of a stipulation. It ap-
pears that during the year 1888, the Charleston Mills were
incorporated under a general act of the General Assembly
of the State of South Carolina, and was organized with a
paid up capital of $250,000, and the object was for the pur-
pose of manufacturing cotton cloth. This mill erected the
buildings, a part of which is now owned by the plaintiff
company. The Charleston Cotton Mills continued to manu-
facture cotton cloth until March, 1896, when it became
embarrassed, ceased operations, and all of the property, con-
sisting of plant, buildings and machinery, were sold under a
decree of the Court, on the 1st day of February, 1897, the
facts attending such sale being more fully set out in an affi-
davit of Mr. Lee. The bondholders of the Charleston
Cotton Mills, through a committee, purchased the machin-
ery, land and the present buildings (now owned by the
plaintiff) for the benefit of all parties interested. On the
6th day of April, 1897, the Charleston Mills was incorpo-
rated under the laws of this State, and the committee who
purchased the property of the Charleston Cotton Mills as
above mentioned conveyed said property, consisting of the
buildings, machinery and plant, to the Charleston Mills, on
the 10th day of April, 1897. The Charleston Mills likewise
became embarrassed, and in 1898 failed in business, and
subsequently all of its property, consisting of the plant,
machinery and buildings, were sold under a decree of the
United States Court, and the same was purchased by J. H.
Montgomery for $100,000, who assigned his bid to the
plaintiff company for whom he bid, and caused the same to
be conveyed by the special master of the United States Court
to the plaintiff company. Pending the hearing of this cause
of action, and upon proper notice, the plaintiff obtained a
temporary injunction or restraining order from Judge W. C.
Benet, enjoining the defendants from proceeding in any way

to collect the said taxes or any part thereof, or to further levy upon, sell or in any way interfere with any of the property, real or personal, of the plaintiff until the hearing and decision of this case upon the merits.

"In the month of February of the present year, and subsequent to the restraining order of Judge Benet, the city council of Charleston passed an ordinance to the effect that the collection and enforcement of taxes for municipal purposes on real and personal property within the city of Charleston shall not be stayed or prevented by any injunction, writ or order issued by any Court or Judge thereof. At the hearing of this cause the defendant was permitted to amend the answer of the city of Charleston and to set up the ordinance just alluded to as a defense and bar to the plaintiff's contention for a perpetual injunction."

The Circuit Judge proceeds to dispose of the issues as follows: "Before discussing the merits of the case, it is necessary to dispose of this question, as we encounter it at the threshold of the case. My conclusion is that the defense cannot be sustained for two reasons; the *first:* Because the ordinance is *prospective* and not *retrospective.* The ordinance is silent as to this fact, and under such circumstances the general rule of construction is that it must be construed to be prospective, unless it appears from the words of the act that it was intended to be restrospective. *Second:* It will be noted that the ordinance was passed not only subsequent to the commencement of the plaintiff's action but subsequent, also, to the restraining order of Judge Benet. The object and effect of that order was to protect (or preserve) the status of these litigants, both plaintiff and defendant, until a final hearing on the merits, and to sustain the defendant's contention would in effect hold that while the restraining order was in force, the defendant could go ahead and pass an ordinance, the effect of which would be to oust the Court of its jurisdiction in an action already pending in Court. In other words, it would enable the city council to legislate for itself a competent defense to an action already pending.

I cannot, therefore, put such an unnatural and strained construction upon this ordinance; this plea or defense is, therefore, overruled.

"We now come to the main question, and that is: whether the plaintiff, the Vesta Mills, is liable for the city taxes, the collection of which has been stayed by an order of Judge Benet. And the answer depends upon a proper construction of an ordinance of the city of Charleston, passed by its officers, on the 24th day of March, 1896, and it is as follows: '(44) An ordinance to exempt certain manufactories from taxation except for school purposes, for five successive years from the time of the establishment of such manufactories. Be it ordained by the mayor and aldermen of the city of Charleston, in city council assembled, That from and after the ratification of this ordinance by a majority of such qualified electors of the city of Charleston as shall vote at an election to be held for that purpose, on the fourth Tuesday in April, 1896, all manufactories established after that time within the corporate limits of the said city, and doing business therein, employing ten or more hands, or having a paid up capital of $10,000 or more, shall, for five successive years from the time of the establishment of such manufactories, be exempt from city taxation, except the taxes for school purposes: *Provided, however,* That should any manufactory, entitled under this ordinance to such exemption from taxes, fail in business and be reorganized, or convey its plant and property to another person, firm or a new company or corporation, the exemption on said plant or property shall be continued or extended for five years from the original establishment of said manufactory, and no longer." In construing this ordinance it becomes important to inquire into the intention, purpose and object of this ordinance; what was the object of the city of Charleston in favoring certain manufactories with an exemption from taxation, except for school purposes? Such industries were encouraged and favored as a means and for the purposes of bringing and keeping within the borders of the city, capital and labor to be used and employed in the

manufacture of the staples of her commerce. Now, upon the facts, we find an old abandoned plant, within the city limits, never entitled to claim, and as a fact never claimed, any exemption from taxation under such ordinance. Both the Charleston Cotton Mills and the Charleston Mills were doomed to failure, and both ceased operations and went out of business. While this state of affairs existed, the plaintiff purchased its plant at a forced sale, paying $100,000 for its purchase, organized and equipped a cotton mill, put blood, life and money into it, and is presumably in a prosperous condition. This, in my judgment, is within the very letter and spirit of the ordinance. And this company is just as much entitled to the exemption given in such ordinance as if it had purchased, instead of this property, some old abandoned warehouse, or the Toale Lumber Mill plant, now idle in the city. It is contended that this plaintiff has not increased the taxable property of the city, that the property it operates was already on the tax books. In short, that it has erected nothing. This position cannot be successfully maintained, for the reason that the premises is untrue. The plaintiff paid out at the start $100,000 for this property, that is subject to taxation; it employs hands, creates and supplies a market in trade, and to all intents and purposes is a new factory established within the city limits, and is entitled to the exemption as such.

"It is, therefore, ordered, that the temporary injunction heretofore granted in this cause be continued of force and made perpetual."

It will not be necessary to consider the exceptions in detail, as the questions raised by them have been classified by the appellant's attorneys under four heads, the first of which is as follows: "Did the Court have jurisdiction to grant the injunction prayed for, after the passage of the city ordinance of February 27, 1900?" The ordinance had the following preamble: "Whereas, by an act of the General Assembly to amend the charter of the city of Charleston, with reference to the enforcement and collection

of taxes on real and personal property, approved December 17, A. D. 1894, the city council of Charleston is authorized and empowered, for the enforcement and collection of taxes for municipal purposes on real and personal property within the city of Charleston, to adopt such of the State legislation heretofore enacted as they may deem expedient, and as may be applicable with reference to the enforcement and collection of State and county taxes." The following rule of construction of statutes, stated by Mr. Chief Justice McIver in *Curtis* v. *Renneker,* 34 S. C., 468, is applicable to this case: "The rule that a statute will never be given such a construction (retroactive) unless it is required, by the express words of the statute, or must necessarily be implied from such words, is too well settled to need the citation of any authority to support it." This rule met with the approval of the Court, also, in *Mut. Aid &c. Co.* v. *Logan,* 55 S. C., 295. There are no express words in the ordinance, manifesting an intention that it should have a retroactive effect; nor are there any words from which it must necessarily be implied that such effect was intended. But there is a stronger reason why the Court had jurisdiction to grant the injunction. Even if the legislature had so intended, it could not have delegated to a municipality the power to pass an ordinance affecting the jurisdiction of the Courts of the State. Mr. Cooley, in his Constitutional Limitations, 141, says: "One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made, until the Constitution itself is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been intrusted, cannot relieve itself of the responsibility, by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which

alone the people have seen fit to confide this sovereign trust." In *State &c.* v. *Hagood*, 30 S. C., 519, the Court uses this language: "It is undoubtedly true that legislative power cannot be delegated, but it is not always easy to say what is and what is not legislative power, in the sense of the principle * * * Without encumbering this opinion with the authorities, we think the view is well stated in Lock's Appeal, 72 Pa., 491: 'Then the true distinction, I conceive, is this: the legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things, upon which the law makes, or intends to make, its own action depend. To deny this, would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' "

The questions classified under the second and third heads are as follows: "Can the plaintiff ask to restrain and enjoin the collection of a tax assessed against the Charleston Mills and its property?" "Is the property acquired by the plaintiff, by purchase at a judicial sale, formerly belonging to the Charleston Cotton Mills, exempt from municipal taxation under the Constitution of 1895, and the ordinance passed in pursuance thereof?" Mr. A. M. Lee, in his affidavit, says: "That the said Charleston Mills was incorporated on April 6th, 1897, and was in no manner whatsoever connected with, or the successor in business to, the Charleston Cotton Mills, nor a reorganization of that corporation; but, on the contrary, it was a corporation gotten up by new people, whose interest was not identical with but practically antagonistic to the interest of the stockholders of the old corporation, the Charleston Cotton Mills, most of them having been creditors of the Charleston Cotton Mills, to wit: owners of its bonded indebtedness. Deponent knows of his own knowledge and alleges that there was no connection between the old organization and its stockholders and

the new, either as successors to or a reorganization of the former." The Charleston Mills was clearly entitled to the exemption from city taxation for five successive years, from the time of its establishment as a manufactory (except the taxes for school purposes), under the provisions of the ordinance hereinbefore mentioned. This exemption was in force at the time its property was assessed for taxation in 1899, as the corporation had not been dissolved. *City Council* v. *Ry. Co.*, 51 S. C., 129. See note to *New York* v. *Sugar Refg. Co.*, 9 L. R. A., (N. Y.), 35-36. The assessment was, therefore, null and void.

The apparent lien of the city council for taxes was a cloud upon the plaintiff's title, and this gave it the right to seek redress in a Court of Equity by way of injunction. *Ketchin* v. *McCarley*, 26 S. C., 1.

The question classified under the fourth head is as follows: "Did the Judge err in making the injunction perpetual, should it be determined that the same was properly granted?" The injunction is only made perpetual as to the collection of taxes for the year 1899.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.