## 7558

### THE TRUSTEES OF THE UNIVERSITY OF SOUTH CAROLINA v. THE TRUSTEES OF THE ACADEMY OF COLUMBIA.

1. INJUNCTION—ISSUES—COURTS.—THIS COURT is clothed, under article V, section 4, of the Constitution, with power to issue orders of injunction and to hear and determine if the conditions exist which authorize relief by injunction. If in a case for an injunction to remove a cloud on a title it becomes necessary to settle an issue of title, this Court can certify that issue to the Circuit Court to be tried by a jury.

2. IBID.—IBID.—EQUITY—CLOUD ON TITLE.—A petition asking the removal of a cloud on title based on a public statute is not without equity and where its determination depends upon the construction of the statute and undisputed facts, only issues of law arise which may be determined by the Court.

3. PRESUMPTIONS.—In order to indulge the presumption that the commissioner of Columbia in 1816 conveyed the land in question to the trustees of the Academy as directed by act of the General Assembly, it would be necessary to indulge the further presumption that the land was unsold in 1816, which would be mounting a presumption on a presumption, which is not permissible.

4. IBID.—STATUTES.—Every presumption must be indulged in favor of an act of the General Assembly, and in order to do so here it is presumed the State reacquired the title to the lands in question after 1816, vested by it in the trustees of the South Carolina College in 1833.

Petition in the original jurisdiction of this Court by the trustees of the University of South Carolina for injunction against the trustees of the Academy of South Carolina.

*Attorney General J. Fraser Lyon* and *Messrs. Shand & Shand, for petitioner. Messrs. Shand & Shand* cite: *As to jurisdiction:* Art. V, sec. 4, Con.; art. IV, sec. 4, Con., 1868; 8 S. C. 374; 27 S. C., 625; 30 S. C., 1; 49 S. C., 378; 57 S. C., 166; 78 S. C., 286; 80 S. C., 120, 512; 78 S. C., 187; 26 S. C., 1. *Respondent has no title under act of 1816 construed with act of 1833:* 4 Stat., 471; 5 Stat., 215, 437, 464, 589, 404; 94 U. S., 284; Suth. Stat. Con., sec. 331; 101 U. S., 315; 2 Whart. Ev., sec. 1331. *Right to injunction:* 4 S. C., 369; 26 S. C., 1; 60 S. C., 232; 110 U. S., 20; 113 U. S.; 526; 136 U. S., 311; 13 L. R. A., 293; 15 L. R. A., 547; 40 L. R. A., 127; 5 Allen, 601; 99 Mass., 209; 21 Conn., 488; 121 Ill., 454; 16 Kans., 519; 99 Ind., 477; 38 Mich., 457; 15 Cal., 127; 34 S. C., 537; 34 Cal., 386; 116 Ala., 567; 6 Pom. Eq., sec. 730, n. 17.

*Messrs. Green & Green,* contra, cite: *As to jurisdiction:* 49 S. C., 384; 57 S. C., 166; 17 S. C., 417; 6 Ency., 151;

Adams Eq., 199. *Petition is without equity:* 6 Ency., 156; 24 N. J., Eq., 378; 27 S. C., 348. *Grant to college is not inconsistent with grant to academy:* 12 Rich., 314; 2 Strob. Eq., 145; 6 Stat., 53. *Issue of title is only triable by jury:* 52 S. C., 238; 71 S. C., 282.

April 26, 1910. The opinion of the Court was delivered by

Mr. Chief Justice Jones. This was a proceeding in the original jurisdiction of this Court, and resulted in the the following judgment, filed on January 7, 1909: "Per Curiam. Upon hearing the petition, return and argument in the above stated case, it is the judgment of this Court that the plaintiff has a good title to the land described in the petition and is entitled to the relief prayed for. It is, therefore, ordered and adjudged that the defendant be perpetually enjoined from asserting any claim to the land described in the petition. The reason for this judgment will be given in an opinion to be hereafter rendered."

As the issue is raised by demurrer to the return of respondent to the petition, we insert the pleadings:

"Your petitioner above named respectfully showeth:

1. "That your petitioner is a duly chartered corporation, with the power to acquire, receive and hold real estate, and to sue and be sued, as will appear by the following recitals, to wit: By Act of December 19, 1801 (5 Stat., 404), the South Carolina College was established and made a corporate body, under the name and style of 'The Trustees of the South Carolina College,' in perpetual succession, with power to have, receive and enjoy lands, tenements and hereditaments, in fee or for life or years, have a common seal, implead and be impleaded, and do all things whatsoever for the benefit of said college in as ample a manner as any person or body corporate can or may by law; that by successive acts of the legislature thereafter the name of said college was changed from time to time, with all the estate,

rights and privileges of the said act of 1801 continued, as will be seen by reference to the act of December 19, 1865 (13 Stat., 313), Revised Statutes of 1872 (page 257, sec. 6), act of March 22, 1878, sec. 9 (16 Stat., 533), General Statutes of 1882, sec. 1032, act of December 23, 1890, sec. 6 (20 Stat., 689), Revised Statutes of 1893, sec. 1100, and 1 Civil Code of 1902, sec. 1264. And finally by act approved February 17, 1906 (25 Stat., 16), it was enacted and declared, 'That the corporation heretofore created by an act entitled "An Act to establish a College at Columbia," ratified 19th December, 1801, and now known as South Carolina College, shall hereafter be known as the University of South Carolina, and shall be, and is hereby, vested with all the property of said college, and shall be entitled to all the rights and privileges, and liable to all the duties imposed upon the said corporation by the said act and all amendments thereto, and all statutes in anywise bearing upon the same;' and 'that the trustees now in charge of said South Carolina College shall continue in charge of said University of South Carolina, with all the rights of succession, and of holding property, and with all the powers and duties under existing laws.'

2. "That the following act of assembly was duly ratified on December 19, 1833 (6 Stat., 485), to wit: 'An Act to vest certain squares and lots of woodland, in the town of Columbia, in the trustees of the South Carolina College.

" 'Whereas, it is deemed important to the health of the officers and students of the South Carolina College that certain squares and lots of woodland in the town of Columbia, which belong to the State, and lie between the said college and the swamp of Rocky Branch, should remain uncleared, and that the control of the same should be given to the trustees of said college for that purpose.

1. " 'Be it, therefore, enacted by the Honorable the Senate and House of Representatives, now met and sitting in

General Assembly, and by the authority of the same, that the following squares and lots of woodland belonging to the State, in the town of Columbia, to wit: Lots numbered on the town plat as 53 and 54, on Medium street, lots numbered 43 and 44 on Green street, one square between Pickens, Bull, Green and Divine streets, and one square between Bull, Pickens, Pendleton and Medium streets, be and the same are hereby granted to and vested in the board of trustees of the South Carolina College, for the purposes hereinabove mentioned.'

3. "That the ten acres last above described are east of Bull street, south of Senate, west of Harden and north of Lower street in the city of Columbia, and are now in possession of your petitioner, and have been in their continuous, uninterrupted and undisputed possession as a corporation ever since the 19th day of December, 1833, claiming title under said act—a period of nearly seventy-five years—during which time your petitioner has exercised on said ten acres, or a portion of it, sundry acts of adverse and exclusive ownership.

4. "That so much of a street, one hundred feet in width, now called College street, heretofore called Medium street, the property of the State of South Carolina, as lies between the said last named block of four acres, and the block on which are the said lots of two acres, was by act of February 21, 1906 (25 Stat., 254), authorized to be closed by your petitioner.

5. "That by act of February 22, 1908, sec. 5 (25 Stat., p. 1256), an appropriation was made for the erection by your petitioner of a classroom and auditorium building 'on any of the property now owned or controlled by the said board of trustees and at any time deeded or given the South Carolina College or the said University of South Carolina for any purpose.'

6. "That very recently the right and title of your petitioner to the property hereinabove described has been

clouded by the claim made and published in a daily morn-
ing newspaper of the city of Columbia, having a very large
circulation, and also orally asserted, that said property does
not belong to your petitioner, but to 'The Trustees of the
Academy of Columbia,' said claim being based, as your
petitioner has been informed, upon the matters hereinafter
stated in the next three succeeding paragraphs of this peti-
tion, the same source of title being claimed for said trustees
of the Academy of Columbia, and also by your petitioner,
to wit: The State of South Carolina.

7. "That the respondent, 'The Trustees of the Academy
of Columbia,' was given a perpetual charter by act of
December 19, 1795, 8 Stat., 183, with right of succession
of holding real estate and other property, and said corpor-
ation has been in continued and uninterrupted active exist-
ence ever since.

8. "That in the appropriation act of December 19, 1816
(6 Stat., 53), the following was inserted as sec. 14, the
'Trustees of the Columbia Academy' therein mentioned
meaning 'The Trustees of the Academy of Columbia.'
'XIV. Be it further enacted, That the commissioner of the
town of Columbia be, and he is hereby, authorized and
required to convey to the trustees of the Columbia Academy
all the unsold lots and squares of land lying in the outer
town of Columbia, east of Bull street, south of Senate street,
west of Harden street, north of Lower Boundary street; and
also all such lots and squares as include the marsh north of
Senate street and eastward of the town; and that the streets
within the said limits be, and they are hereby, vested in
the said trustees, who shall have power to dispose of the
same, reserving always the right of way to such persons as
now are or hereafter may become the owners of lots, squares
or portions of land within the said limits.'

9. "That the claim is made in behalf of respondents that
while there is no record nor evidence of any deed by the
commissioner of the town of Columbia to said ten acres,

or the intervening street, it must be presumed that the said commissioner did convey to the trustees of the Columbia Academy all unsold squares and lots in the town of Columbia east of Bull street and south of Senate street, as he was directed to do; that the ten acres hereinabove mentioned are north of Lower, west of Harden, east of Bull and south of Senate streets; that these lots must have been unsold in 1816, because the State declared them to be her property in 1833; that the intervening street, therefore, was vested in 'The Trustees of the Academy of Columbia;' that there is no record nor evidence of any conveyance since that time by said Academy of Columbia; and, therefore, that they are now the property of said last named corporation.

10. "That while this claim is of recent date, your petitioner has requested the respondent to disavow said claim and remove this cloud upon petitioner's title by giving to it a quit-claim deed, but respondents decline so to do, alleging that they are not willing to renounce rights that they have under said act of 1816, if any.

11. "That said respondent has indicated no intention, and your petitioner is satisfied it has none, of instituting an action at law to recover this property, and your petitioner has no remedy in a court of law.

12. "That said claim based upon a public statute operates as a cloud on your petitioner's title, which has prevented it already from erecting upon this property said classroom and auditorium, as it wished and had resolved to do, and it is, and in future will further be, much embarrassed in using or improving said property; that no relief can be given to your petitioner by cancellation of said statute, and, therefore, petitioner's relief is in equity, where the said cloud on its title may be removed by the judgment of the Court declaring that the act of December 19, 1816, does not in any way impair the title asserted by the State and granted to your petitioner by the act of December 19, 1833, and where a proper remedy may be afforded your petitioner by

injunction restraining any action or claim hereafter to said ten acres of land and the intervening street by reason of anything contained in said act of 1816. ˙

"Wherefore, your petitioner prays that respondent may be required to show cause before this Court why a writ of injunction should not be issued enjoining it from bringing action or otherwise asserting claim to the two squares of land, four half-acre lots and intervening street hereinabove described, and that upon such hearing being had a perpetual injunction be issued as above, and that petitioner have such other relief as may be appropriate."

### RETURN.

"The respondent, The Trustees of the Academy of Columbia, upon whom the petition and order of this Court in the above entitled cause has been served requiring them to show cause before the Supreme Court on Monday, November 30th next, why the permanent injunction prayed for in the petition should not be granted, for cause respectfully shows: ˙

1. "That this Court has no jurisdiction of this case, for the reason that it appears from the face of the petition:

(a) "That the existence of the right of the petitioner to the relief sought is dependent upon the result of the trial of the title to the real estate described in the petition, the title which is denied by respondent, and the title of petitioner is based upon a grant junior to the grant to respondent; which right respondent is entitled to have tried by jury before the injunction case can issue.

(b) "That the Constitutions of 1868 and 1895 abolished courts of chancery as a distinct tribunal in this State, and vested the powers and jurisdiction of said courts in the Court of Common Pleas, which is provided with all the necessary machinery for the trial of both legal and equitable issues; and the power granted this Court to issue writs or orders of injunction is necessarily restricted by the provisions contained in art. V, sec. 4 and sec. 15, of the Constitu-

tion of 1895, to wit: the grant to this Court of 'appellate jurisdiction only in cases of chancery' and to the Court of Common Pleas of 'original jurisdiction subject to appeal to the Supreme Court to issue writs or orders of injunction * * * etc., and jurisdiction in all civil cases;' to cases in which the existence of the right for injunction is not dependent upon its establishment at law.

2. "That it appears from the face of the petition that the same is without equity, in that it appears that the alleged cloud is a grant from the State to respondents of the real estate described in the petition prior to the alleged grant of the petitioner, and no facts are alleged tending to show the invalidity of said grant under which respondents claim, or that it would be inequitable for them to enforce the same.

3. "Further answering and for further cause these respondents allege that they are seized in fee and entitled to the possession of the real estate described in the complaint by good and sufficient grants in law paramount to any title of the petitioners; and upon information and belief deny any acts of ownership or adverse possession on the part of the petitioners inconsistent with the title of respondents, and allege that the said alleged acts of ownership and adverse possession on the part of the petitioner, if any there be, were permissive and in no wise inconsistent with respondent's title.

4. "Upon information and belief that the title of respondents to said premises has always been asserted and maintained by respondents, and the petitioners had notice thereof prior to October, 1902, at which time the matter was discussed in the newspapers and the petitioners instituted an investigation and made inquiries of respondents and received the information requested, and they allege that this action is now barred by the statute of limitations and the *laches* of the petitioners.

5. "They deny each and every allegation in said complaint contained inconsistent with the answer."

DEMURRER TO ANSWER.

"The petitioner demurs to the return of the respondent for insufficiency in not stating facts sufficient to constitute a defense, in that sec. 14 of the act of December 19, 1816 (6 Stat., 53), upon which respondent alone relies, furnishes no evidence of any title or right in respondent to the lots of land described in the petition."

The first question presented is whether this Court has jurisdiction to grant the relief sought. Art. V, sec. 4, of the Constitution, provides: "The Supreme Court shall have power to issue writs or orders of injunctions, mandamus, *quo warranto,* prohibition, *certiorari, habeas corpus* and other original and remedial writs. And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as law, except in chancery cases where the facts are settled by a jury and the verdict not set aside, and shall constitute a court for correction of errors of law under such regulations as the General Assembly may by law prescribe."

Here is an express grant of original power to issue orders of injunction, and it necessarily implies power to hear and determine whether the conditions exist which authorize relief by injunction. *Salinas* v. *Aultman,* 49 S. C., 378, 27 S. E., 407; *Gilmer* v. *Hunnicutt,* 57 S. C., 166, 35 S. E., 521; *State ex rel.* v. *Riddock & Byrnes,* 78 S. C., 286, 61 S. E., 207; *State ex rel.* v. *New Charleston Hotel Co.,* 80 S. C., 120, 60 S. E., 207; *McMeekin* v. *Central Carolina Power Co.,* 80 S. C., 512, 61 S. E., 1020.

Whenever an issue of fact arises in this Court, the necessary machinery for determining the same is provided in sec. 11 of the Civil Code of Procedure, by reference to a referee to take testimony and report under instructions prescribed by the Court or by framing an issue and certifying the same to the Circuit Court. Hence, if in this

case it should be concluded that an issue of title is raised which should be submitted to a jury no difficulty would be experienced in referring that issue to the Circuit Court.

The next question is whether the petition is without equity. The object of the petition is to remove a cloud upon title, a well known branch of equity jurisdiction. *Ketchin* v. *McCarley,* 26 S. C., 7, 11 S. E., 1099; 2 *Vesta Mills* v. *City Council,* 60 S. C., 1, 38 S. E., 226; *Kittles* v. *Williams,* 64 S. C., 232, 41 S. E., 975. The petitioner is in possession claiming title under the act of 1833; the respondent is asserting title under an act of 1816, which embarrasses petitioner in the use and improvement of the property, and is of such apparent force as to require petitioner to resort to evidence to defeat it. This constitutes a cloud upon petitioner's title which it is the province of equity to remove. Generally the courts grant relief by cancellation or amendment of an instrument creating the cloud over the title, but where the nature of the written document is such that this cannot be done, the Court may make such other decree as justice may require. *Martin* v. *Graves,* 5 Allen, 601, 2 Story's Equity, sec. 694. In this case the cloud arises by a claim of title under a public statute, while the Court may not undertake to cancel or alter the statute, it may declare whether the statute and the assertion of right thereunder operate to cast a cloud upon the title of the party in possession.

Respondents finally contend that upon the case as presented they are entitled to a trial by jury on the issue of title to the land involved. We think not. The question involved is really one of law dependent upon the construction of the statutes of 1816 and 1833 and the undisputed facts, which are susceptible of but one inference. Assuming that ordinarily an issue of title arising in the original jurisdiction of this Court would be sent to the Circuit Court for trial by jury, the Court would not do so when really

nothing but an issue of law is involved. *Windham* v. *Howell*, 78 S. C., 192, 59 S. E., 852.

We have already set forth the pleadings, reference to which will show that respondents deny only such facts stated in the petition as are inconsistent with those stated in the return. Analysis will disclose that there are no facts stated. in the return unless it be in the third paragraph of the return, which alleges that respondents "are seized in fee and entitled to possession of the real estate described in the complaint by good and sufficient grants in law paramount to any title of petitioners; and upon information and belief deny any acts of ownership or adverse possession on the part of petitioners inconsistent with the title of respondents and allege that said alleged acts of ownership and adverse possession on the part of petitioners, if any there be, were permissive and in no wise inconsistent with respondent's title."

Under the demurrer to the return this may be regarded as eliminating any claim of petitioner founded on adverse possession, but the controlling question of law remains whether petitioner's title is good under the act of 1833 and the undisputed facts alleged in the petition, as against the claim of respondents under the act of 1816. By an act of 1816 the commissioner of the town of Columbia was authorized and required to convey to the trustees of the Columbia Academy all the "unsold lots and squares," etc. No deeds are shown to have been executed under this statute, but it is a well known historical fact that all the records of deeds in Richland county were. destroyed by fire in 1865. In order to indulge a presumption that the commissioner conveyed the land in question to the respondent we would have to indulge a further presumption that the land was unsold in 1816, thereby mounting a presumption of fact upon a presumption of fact contrary to law.

Nor does the fact that the act of 1833 vested. the lots in question in the petitioner warrant an inference that the lots were unsold in 1816, for it may be that the lots had been

sold prior to 1816 and reacquired by the State after 1816. Every presumption must be indulged in favor of the validity of the act of 1833, and, in the absence of a contrary showing, we must assume that the rights vested by it were consistent with every right acquired under the act of 1816.

Our conclusion is that the act of 1833 lawfully vested in the petitioner a good title to the land in question, and that the claim of respondent based upon the act of 1816 is a cloud thereon which should be removed.

The judgment of the Court has already been announced.